HINTON v. INSURANCE CO.

(Filed May 3, 1904).

1. SERVICE OF PROCESS—*Insurance—Acts 1899, chs. 54, 62.*

Service of process on the state insurance commissioner is valid although the insurance company has not domesticated.

2. INSURANCE—*Evidence—Fraud.*

In an action on a policy of insurance it is competent to show that the policy was procured by fraudulent statements as to the health of the insured; that the premiums were not paid by the insured; that the party paying the premiums and for whose benefit the policy was issued had no insurable interest in the insured, and that the assignment of the policy was made without the knowledge or consent of the insurer.

3. INSURANCE—*Premiums—Beneficiaries.*

Where it was agreed at the time application for a life policy was made that a person having no insurable interest in the life of the insured should pay all the premiums and receive the proceeds of the policy, it was void.

4. INSURANCE—*Executors and Administrators.*

Where the assignee of an insurance policy could not recover on account of having no insurable interest in the insured, for whom he had paid the premiums, he cannot, as the administrator of the insured, recover the amount of the policy for the purpose of carrying out the original agreement that the insurance was to be for his benefit.

5. EVIDENCE—*Insurance—Contracts.*

Evidence that a policy of insurance was not purchased for the benefit of the insured, and that the insured did not pay the premiums, is not incompetent as tending to vary the terms of a written contract.

ACTION by J. L. Hinton against the Mutual Reserve Fund Life Association, heard by *Judge M. H. Justice* and a jury, at May Term, 1903, of the Superior Court of PASQUOTANK County. From a judgment for the plaintiff, the defendant appealed.

*Pruden & Pruden* and *Shepherd & Shepherd,* for the plaintiff.

*J. W. Hinsdale & Son,* for the defendant.

CONNOR, J. The plaintiff alleges that on November 8, 1897, the defendant corporation issued its policy to Mary F. Brothers for the sum of $2,000 payable to her executors or administrators, and that she paid the premiums on it as they fell due; that on the .... day of July, 1900, the said Mary died intestate, and the plaintiff was duly appointed her administrator; that proper proofs of death were duly

forwarded to and accepted by the defendant and demand made for the payment of the amount of said policy and refused.

The defendant, answering, admitted issuing the policy, denied that Mary F. Brothers paid the premiums, admitted the death and denied that proper proofs of death were forwarded to and accepted by the defendant. The defendant also alleged that certain statements made by the insured in regard to her health were false; that such statements were, by the terms of the policy, made a part of the consideration upon which it was issued, etc. For a further defense, the defendant alleged that on and before the date of the policy Mary F. Brothers was the wife of Joseph S. Brothers; that said Joseph purchased from C. L. Hinton, a son of the plaintiff, a tract of land which he represented to contain one hundred and fifty acres, for which the said Joseph promised to pay $2,000; that said C. L. Hinton executed a deed to the said Joseph, and at the same time and as a part of the transaction the said Joseph executed his note to C. L. Hinton for $2,000 and a mortgage on said land to secure its payment; that the plaintiff was the real owner of the land, and that C. L. Hinton acted for his benefit in the sale thereof; that on November 2, 1897, he transferred said note to the plaintiff; that the tract of land contained only one hundred and seven acres and was not worth more than $500, as was well known to both parties to said contract; that before November 2, 1897, it was agreed between said Joseph and the plaintiff that said Joseph should insure his life for the sum of $2,000 to secure the said indebtedness; that in consequence of said agreement the said Joseph made application for such insurance, but the application was rejected by the company to which it was addressed; that thereafter, and before the second day of November, the plaintiff requested the said Mary F. Brothers to insure her life to

secure the said indebtedness; that pursuant to such request she made application to the defendant for a certificate of membership; that upon the faith of the representations made in the application, a certificate was issued payable to the estate of Mary F. Brothers; that the plaintiff, having no insurable interest in the life of said Mary, and well knowing that the defendant would not issue a certificate to said Mary payable to him as beneficiary, wrongfully and unlawfully entered into an agreement with the said Mary and the said Joseph, before or at the date of the application for said certificate, by which it was agreed that the said policy should on its face be made payable to the estate of the said Mary, but that the plaintiff should pay any and all dues and assessments upon said policy, and upon her death the amount of said policy should be paid to the plaintiff in full of the indebtedness of said Joseph, and he would cancel the said mortgage, etc.; that at the time of or before making such application the said Mary promised and agreed to assign said policy to the plaintiff; that pursuant to said agreement the plaintiff paid the admission fee and all dues and assessments levied upon said policy; that in pursuance of said agreement the said Mary on the .... day of December, 1897, executed an assignment of said certificate or policy to the plaintiff, a copy of said assignment being attached to the answer; that the husband of the said Mary did not sign or consent in writing to the execution of said agreement, and no notice of the assignment was given to the defendant until after the death of the said Mary F. Brothers; that upon the death of said Mary the plaintiff notified the defendant that he was the holder of said policy by assignment, made proof of claim as such, and requested payment of the amount thereof.

The defendant refused to pay the amount to the plaintiff or to recognize him as assignee, whereupon the plaintiff

demanded payment to him as administrator; that while this action is prosecuted by the plaintiff as administrator, the purpose is to secure the payment thereof for his sole benefit, personally, in pursuance of the said agreement; that the plaintiff had no insurable interest in the life of Mary F. Brothers, and that the agreement between the plaintiff Joseph S. and Mary F. was a fraud upon the defendant, and the policy was a wager, and in consequence thereof void.

It is provided in the policy that no assignment or change of beneficiary shall be valid without the consent of the company; that the assignee must have an insurable interest. The plaintiff filed no reply to the new matter set up in the answer. The defendant made a motion, before answering, to set aside the service of summons on the Insurance Commissioner. This was refused and the defendant excepted. This question has been settled adversely to the defendant and the exception cannot be sustained. *Moore v. Life Asso.*, 129 N. C., 31.

When the cause was called for trial the defendant tendered a series of issues directed to the several matters set up in the answer by way of defense to the action. The plaintiff objected and the Court declined to submit either of the defendant's issues, to which exception was noted. The Court thereupon submitted the following issues: "1. Is defendant company indebted to the plaintiff as alleged in the complaint?" "2. If so, in what sum?' "3. Did Mary F. Brothers obtain the policy of insurance by fraudulent representation?" The defendant excepted.

It was admitted that the said Mary was dead and the plaintiff was her administrator. The plaintiff introduced the policy and so much of the answer as admitted the receipt of proofs of loss, and rested.

The defendant introduced Joseph S. Brothers and pro-

posed to prove by him each and every allegation in the answer as a further defense as above set forth. The questions propounded to the witness are set forth in full in the case on appeal and cover each and every one of said allegations. To this testimony the plaintiff objected. The objections were all sustained and the defendant excepted. There were other exceptions to the exclusion of testimony in regard to the physical condition of the insured, and it may be that they will not arise upon another trial.

Without entering into a discussion of the several exceptions bearing upon this phase of the case, we think there was evidence proper to be submitted to the jury under proper instructions, upon the third, or some appropriate issue, directed to the questions raised by the defense in regard to the condition of the health of the insured at the time the policy was issued and the representations made by her in the application.

The defendant also offered to prove that Mary F. Brothers was a woman of no property with which to pay life insurance premiums or assessments, and no capacity or ability to earn any money for that purpose. This testimony, upon objection, was excluded and the defendant excepted. The defendant offered to read the assignment in evidence. Upon the plaintiff's objection it was excluded and the defendant excepted. There was evidence tending to show that Mary F. Brothers worked in the field, did washing, picked cotton and performed other like labor. She died a few months after giving birth to twins. She was illiterate and unable to sign her name.

The plaintiff's contention is that the entire testimony, if admitted, failed to show any defense to the action. If he is correct in this, of course such testimony was immaterial and its rejection harmless. The proposed testimony was

clearly relevant to the issue and the witness competent to testify to such facts as were within his knowledge.

It would seem very clear that if the testimony offered by the defendant is true, as we must for the purpose of disposing of this appeal take it to be, a fraud was practiced upon the insurance company. It is expressly alleged, and, in support of the allegation, was proposed to be shown, "that John L. Hinton had no insurable interest in the life of Mary F. Brothers, and well knowing that the defendant would not issue a certificate of membership on the life of said Mary F. Brothers payable to him as beneficiary, entered into an agreement with the said Mary F. Brothers and the said Joseph S. Brothers, her husband, before or at the date of the application for the certificate of membership or policy of insurance, by which it was agreed that the said policy should on its face be made payable to the estate of the said Mary F. Brothers, but that said John L. Hinton should pay any and all dues and assessments upon said policy, and upon her death the amount of said policy should be paid to the said John L. Hinton, who upon receipt of the amount thereof from the defendant should receive the same in full payment of the indebtedness of said Joseph S. Brothers to him, and that he should thereupon cancel and discharge the said mortgage upon the said tract of land. * * * In the light of the further testimony proposed to be introduced that the real value of the land sold was but $500, and that the plaintiff paid the premiums and assessments, and within a month after the policy was issued the said Mary assigned it to the plaintiff, that none of these facts were known to the defendant, although there was a plain provision in the policy that no assignment should be valid until notice given to the company, the defendant was entitled to have an issue submitted to the jury inquiring as to the truth of the allegations, and in our opinion the proposed testimony was mate-

rial and competent to be heard and considered by them upon such issue.

The defendant further says that the policy was what is known in the books as a wager upon the life of Mary F. Brothers, and therefore void as against public policy. Whatever conflict there may be, and it must be conceded that there is very much, as to what constitutes an insurable interest in the life of a person, this Court has adopted a well-defined principle which meets our approval.

*Burwell, J.,* in *College v. Insurance Co.,* 113 N. C., 244, 22 L. R. A., 291, after naming several cases, says: "These instances and others that might be mentioned seem to show that, except in cases where there are ties of blood or marriage, the expectation of advantage from the continuance of the life of the insured, in order to be reasonable, as the law counts reasonableness, must be founded in the existence of some contract between the person whose life is insured and the beneficiary, the fulfillment of which the death will prevent; it must appear that by the death there may come damage which can be estimated by some rule of law, for which loss or damage the insurance company has undertaken to indemnify the beneficiary under its policy. When this contractual relation does not exist, and there are no ties of blood or marriage, an insurance policy becomes what the law denominates a wagering contract, and under its rules, made and enforced in the interest of the best public policy, all such contracts must be declared illegal and void, no matter what good object they have in view." *Merrimon, J.,* in *Burbage v. Windley,* 108 N. C., 357, 12 L. R. A., 409, says: "As the insured had no insurable interest in the life of the *cestui que vie,* the contract was simply a wager." In that case the premiums were paid by the beneficiary. In *Albert v. Ins. Co.,* 122 N. C., 92, 65 Am. St. Rep., 693, the policy was taken out by the insured and premiums paid by her.

135——21

This Court sustained the policy. We have no disposition to question that case. The writer, if the question were an open one in this State, would feel constrained to follow the authorities holding the contrary view. The decision is sustained by the authorities cited. The testimony proposed in this case was that the agreement was made before or at the time of the application, and that the plaintiff was to pay the entrance fee and all further assessments, he not then having or expecting to have any insurable interest in the life of the insured. This is a very different case from one where the insured · has taken out a valid policy, paying the premium thereon, either as a gift to some friend or as collateral security to a debt, and assigns the policy with the knowledge of the company. The plaintiff was to be paid his debt from the proceeds of the policy, he paying all of the premiums and awaiting her death to reap the profits of his bargain. In *Ruse v. Insurance Co.,* 23 N. Y., *Seldon, J.,* says: "A policy obtained by a party who has no interest in the subject of insurance is mere wager policy. Wagers in general, that is, innocent wagers, are at common law valid, but wagers involving immorality or crime or in conflict with any public policy are void. To which of these classes then does the wagering policy belong? \* \* \* Such policies, if valid, not only afford facilities for a demoralizing system of gaming, but furnish strong temptation to the party interested to bring about the event insured against."

The learned Justice traces the history of the law and its development in England resulting in the passage of the act of Parliament declaring all such policies void, saying: "My conclusion therefore is that the statute of 14 George III. avoiding wager policies upon lives was simply declaratory of the common law, and that all such policies would be void independently of that act." *Burbage v. Windley, supra.*

While there are conflicting decisions in this country, a

careful examination of them brings us to the conclusion that the foregoing is the sound view of the subject. "Of all wagering contracts, those concerning the lives of human beings should receive the strongest, the most emphatic and the most persistent condemnation." *Ins. Co. v. Sturgis,* 18 Kan., 93, 26 Am. Rep., 751; *Price v. Knights of Honor,* 68 Tex., 366; *Ins. Co. v. Schaeffer,* 94 U. S., 457. *Mr. Justice Field,* in *Warnock v. Davis,* 104 U. S., 775, says: "Such policies create a desire for the event. They are therefore, *independently of any statute on the subject,* condemned as being against public policy." May on Ins. (4 Ed.), 44, 45.

The plaintiff, however, says that conceding this to be the law, the insured had an insurable interest in her own life; the policy was valid when issued; the assignment being invalid did not affect the integrity of the policy; that the right to maintain this action by the administrator of the insured is not affected by the void assignment. It is held in many cases, and we have no disposition to question the principle, that every person has an insurable interest in his own life and may insure his life for the benefit of his executors, administrators or assigns; that such policy being valid may be assigned to one having an insurable interest. We do not question the validity of assignments of life insurance policies to a creditor, or the right of the creditor to receive the amount of his debt, together with such sums as he has paid on account of assessments or premiums, or an assignment to one having any other insurable interest. That a creditor has an insurable interest in the life of his debtor is well settled. When the assignment of a policy is made in good faith to secure a subsisting debt, or a present loan, or a debt then contracted, the courts have sustained such assignment, certainly to the extent of such indebtedness and premiums paid out to keep the policy alive. *Carmack v.*

*Lewis,* 82 U. S., 643; *Ins. Co. v. Shaeffer,* and *Warnock v. Davis, supra;* May on Insurance, 80, *et seq.* The defense made and the testimony proposed to be introduced go very far beyond the principle upon which these cases rest. The allegation here is that at and before the application was made there was an agreement between the plaintiff, the husband and the insured that the policy, although in truth and in fact was to be for the benefit of the plaintiff, who knew that he had no insurable interest in the life of the wife and knew that the company would not issue the policy payable to him, should be made payable to the estate of the wife and immediately assigned to the plaintiff, who was to pay the admission fee and all of the premiums.

In *Asso. v. Norris,* 115 Pa. St., 446, 2 Am. St. Rep., 572, application was made by the assured for and a policy issued on her life payable to her son-in-law, Norris. Pursuant to an agreement made before the application Norris assigned the policy to one Spangler, having no insurable interest in the life of the insured, who paid all of the assessments. Notice of the assignment was given to the company. Spangler was the medical examiner of the company and it was for that reason the policy was not made payable to him. Suit was brought upon the death of the assured by Norris to the use of Spangler. The Court said: "If now we admit that Norris had such an interest in the assured as would have warranted him in taking a policy on her life, yet that fact cannot help out the plaintiff's case, since the policy was not founded on that interest, neither was it for the benefit of Norris, but for the benefit of one who had no interest in the insured's life." The principle upon which the testimony offered by the defendant is made material is thus stated by the Supreme Court of Texas in *Ins. Co. v. Hazelwood,* 75 Texas, 338, 16 Am. St. Rep., 893, 7 L. R. A., 217, quoting from Bishop on Life Insurance: "The question

is whether the policy was in fact intended to be what it purports to be, or whether the form was adopted as a cover for a mere wager. If the plaintiff and the insured confederate together to procure a policy for the plaintiff's benefit, when he is not and does not expect to be a creditor of the insured, and with a view of having the policy assigned to him without consideration, the policy is void. There are respectable authorities which hold that the assignment of the policy without regard to any pre-existing agreement, to one having no insurable interest, is a fraud upon the company, against public policy and therefore avoids the policy." This view is strongly stated by *Horton, C. J.,* in *Ins. Co. v. Crum,* 36 Kansas, 146, 59 Am. Rep., 537. To the suggestion that the attempted assignment was void, he says: "The law does not tolerate attempted frauds any more than it does those that are committed. * * * If the beneficiaries can now recover, they are doubly benefited by the questionable transaction in which they were engaged."

The Supreme Court of Pennsylvania, in *Guilford v. Moose,* 104 Pa. St., 74, 49 Am. Rep., 570, expresses itself in very vigorous terms regarding wagering life insurance contracts in every form: "The very foundation of the doctrine is that no one shall have a beneficial interest of any kind in a life policy, who is not presumed to be interested in the preservation of the life insured. * * * The beneficiary is directly interested in the death of the insured. Moreover, if such a transaction were permitted, the wager could always be concealed under the mere form of the policy. Nor can we see that did the defendant's case depend upon an assignment directly from Moose to himself, how it could be bettered in the least." The opinion concludes with these words: "So fraught with dishonesty and disaster and so dangerous even to human life has this insurance gambling become, that its toleration in a court of justice ought not for one moment

to be thought of." Mr. May, in the last edition of his work on Insurance, comes to the same conclusion: "And although innocent wagers were once sustained, the courts will not now waste their time in discussing the question whether what is substantially a wager ought or ought not to be held good upon any grounds. Under the influence of a healthy public sentiment they have become impatient of investigating disputes founded upon any species of gambling, and almost without exception refuse to enforce a contract supported by such a subject-matter." May on Insurance, 74. It is said, however, that the suit is by the plaintiff as administrator and the recovery will be for the benefit of the estate of Mary F. Brothers. The record shows that the defendant offered to show that, while the action is prosecuted in the name of the plaintiff as administrator, the purpose thereof is to secure the payment of the policy for the sole benefit of the said John L. Hinton, personally, in pursuance of the agreement set forth in the answer. This was excluded. If this were proved, it would be a singular result if by this means the plaintiff can reap the profits of a contract denounced by the law as contrary to public policy. If the agreement alleged to have been made by the parties to the transaction is shown by competent evidence and found by the verdict of a jury, it would be a reproach to the law if the two living parties can use its process to gather the fruits of their illegal agreement after the death of the one who was the ignorant and passive instrument of the scheme to make profit by her death. The testimony was competent. It is said, however, that to permit the testimony to be introduced violates the rule excluding parol evidence to contradict a written instrument. The proposed testimony in no manner contradicted the terms of the policy. It was offered to prove an agreement collateral to the policy. As his Honor excluded the entire testimony offered by the defendant as immaterial,

and as the case was argued before us upon that view, we cannot indicate otherwise than by the general principles announced what portions of it are competent.

The extent of our decision is that the defendant is entitled, if it can, to show that the application was made and the policy obtained under the circumstances and for the purposes alleged, and that the defendant had no notice of the agreement or of the assignment of the policy.

For the refusal to submit the issues tendered by the defendant, or such others in lieu thereof as the Court may think proper, and to receive testimony material and tending to prove the affirmative of the issues, there must be a

New Trial.

WALKER, J. I concur in the result of this appeal upon the grounds first stated by the Court in its opinion, namely, that the defendant is entitled to a new trial, because of the erroneous ruling of the presiding Judge upon the question as to the condition of the health of the insured at the time she applied for the policy and the same. was issued to her, and as to the representations made in the application. This error extends to all the issues, as a false, fraudulent and material representation in regard to the state of the insured's health, if found by the jury, will vitiate the policy.