This is an action on a policy of insurance by which the defendant, in consideration of the payment of premiums as stipulated therein, promised and agreed to pay to the plaintiff as the beneficiary named in said policy, the sum of $1,000, at the death of Charlie Lee, the insured, provided his death resulted from injuries caused "by his being struck by a vehicle which is being propelled by . . . gasoline . . . while insured in walking or standing on a public highway."
The policy was issued on 15 October, 1928. On 3 February, 1931, the insured, Charlie Lee, was struck and killed by a truck which was being propelled by gasoline. At said date, the policy was in full force and effect according to its terms. Proofs of the death of the insured, as required by the policy, were duly furnished to the defendant by the *Page 316 
plaintiff. The defendant denied liability on the policy, and declined to pay the amount thereof to the plaintiff. This action was begun on 17 April, 1931.
The defendant denied liability on the ground that the policy was void (1) for that its issuance was procured by false and fraudulent representations made by the plaintiff with respect to the relationship between himself and the insured, and (2) for that the plaintiff had no insurable interest in the life of Charlie Lee, the insured, at the time the policy was issued, and that plaintiff paid the first and all subsequent premiums on the policy. The defendant further denied liability on the ground that the policy contains a provision that it "does not cover a loss sustained by the insured while under the influence of alcoholic or intoxicating liquors, or while the insured is committing a violation of law," and that at the time of his death the insured was under the influence of alcoholic or intoxicating liquor and was committing an act in violation of law, to wit, transporting intoxicating liquor, unlawfully in his possession.
The plaintiff, as a witness in his own behalf, testified: "I knew Charlie Lee, the insured in the policy sued on in this action. He was not related to me by blood or marriage. He had been living with me for about six months at the time the policy was issued. He continued to live with me for about a year and a half after the policy was issued. He was not living with me at the time of his death. His mother gave him to me. He was then about 13 years of age. His mother and her husband, the boy's father, were living separate and apart from each other. He had left the State. From the time the boy came to live with me, I took care of him, furnished his meals, furnished him a place to sleep, furnished his clothes, and bought his school books. He went to school while he was living with me. During that time, I provided him with all the necessaries of life, and with all the comforts that he had. I had charge and control of him. No one else exercised any control over him. He slept in a room adjoining mine. I own and conduct a cafe in Elizabeth City, N.C.
"At the time the policy sued on in this action was issued, I had several policies issued by the defendant. One day the agent of the defendant asked me if I had any one — a son or a daughter — on whom I could take out another policy. I told him that I had no lawful children but that I had an adopted son — a boy whom I was treating as a son, and who lived with me as a son. The boy was not there that day. The next day the agent came to see me. He asked the boy his age, and then wrote the policy. I paid the first and all subsequent premiums on the policy. I am the beneficiary named in the policy, and furnished to the defendant proofs of the death of Charlie Lee, the insured. *Page 317 
"The boy was not living with me at the time he was killed. He had left me about six months before his death. He got to stealing from me and I told him he had better go back to his people. I did not run him off, but he left. I told him to go back to his home. I went to his funeral, but did not stay until it was over. I went to Norfolk that day to see my father who was sick. After the boy went back to his people, he would come to my cafe, from time to time. I gave him food and money. He washed dishes, swept the floor, and did whatever I told him to do."
There was evidence tending to show that after the insured was struck and killed by the truck, a pint bottle containing whiskey was found in his belt under his clothes. This bottle was taken from his person by an officer. There was no evidence tending to show that he had drunk whiskey from the bottle, or that he was under the influence of alcoholic or intoxicating liquors at the time he was struck and killed by the truck.
The mother of the insured is dead. His father had abandoned her and her children, prior to the issuance of the policy of insurance. His whereabouts are unknown.
The issues submitted to the jury were answered as follows:
"1. At the time of the issuance of the policy of insurance sued on, did the plaintiff, James Slade, have an insurable interest in the life of Charlie Lee? Answer: Yes.
2. Did the insured, Charlie Lee, suffer loss of life by being struck by a vehicle which was being propelled by . . . gasoline . . . while insured was walking or standing on a public highway, as alleged in the complaint? Answer: Yes.
3. Was the said Charlie Lee at the said time under the influence of alcoholic or intoxicating liquors as alleged in the answer? Answer: No.
4. Was the said Charlie Lee at said time committing some act in violation of law as alleged in the answer? Answer: No.
5. In what amount, if any, is defendant indebted to the plaintiff? Answer: $1,000, with interest from 4 April, 1931, to date."
From judgment that plaintiff recover of the defendant the sum of $1,000, with interest from 4 April, 1931, and the costs of the action, the defendant appealed to the Supreme Court.
In Hinton v. Insurance Co., 135 N.C. 314, 47 S.E. 474, it is said: "Whatever conflict there may be, and it must be conceded that there is much, as to what constitutes an insurable interest in the life of a person, this Court has adopted a well-defined principle which meets with our approval. Burwell, J., in College v. Insurance Co., *Page 318 113 N.C. 244, 18 S.E. 175, 22 L.R.A., 291, after naming several cases, says: `These instances and others that might be mentioned, seem to show that except in cases where there are ties of blood or marriage, the expectation of advantage from the continuance of the life of the insured, in order to be reasonable, as the law counts reasonableness, must be founded in the existence of some contract between the person whose life is insured and the beneficiary, the fulfillment of which the death will prevent. It must appear that by the death there may be damage which can be estimated by some rule of law for which loss or damage the insurance company has undertaken to indemnify the beneficiary under its policy. Where this contractual relation does not exist, and there are no ties of blood or marriage, an insurance policy becomes what the law denominates a wagering contract, and under its rules, made and enforced in the interest of the best public policy, all such contracts must be declared illegal and void, no matter what good object they have in view."
Applying this principle to the instant case, it is manifest, we think, that the policy of insurance sued on is a wagering contract, and for that reason no action thereon can be maintained in the courts of this State.
The policy was issued on the application of the plaintiff, who is the beneficiary named therein. The plaintiff was not related by blood or marriage to the insured. There was no contractual relation between the plaintiff and the insured, by reason of which the plaintiff had any interest, pecuniary or otherwise, in the continuance of the life of the insured. The plaintiff paid the first and all subsequent premiums on the policy.
The policy was void at its inception. There was error in the refusal of defendant's motion at the close of all the evidence for judgment dismissing the action as of nonsuit. For this reason the judgment is
Reversed.