### FRANCES McCORMICK ALLGOOD v. THE WILMINGTON SAVINGS & TRUST COMPANY, TRUSTEE.

(Filed 26 August, 1955.)

**1. Money Received § 1—**

> An action for money had and received may be maintained as a general rule whenever the defendant has money in his hands which belongs to plaintiff, and which in equity and good conscience he ought to pay to plaintiff.

**2. Same—**

> An action for money had and received is based upon the equitable principle that a person should not be permitted to enrich himself unjustly at

the expense of another, and neither wrongdoing nor fraud is an element of the cause of action.

**3. Pensions § 3—Where pension policy is not canceled after termination of employment, beneficiary is entitled to proceeds upon death of employee.**

The rule of a pension system that an employee-member voluntarily leaving the employment should cease to be a member of the system and should receive no benefits from the pension fund or any contract purchased thereunder for his benefit, entitles the trustee of the fund, upon the voluntary termination of the employment by an employee, to cancel at any time before the death of the insured employee an insurance policy purchased for his benefit, but when the trustee does not do so, and the policy is in full force and effect at the death of the insured employee, the beneficiary named in the policy is entitled to the proceeds of the policy rather than the trustee of the pension fund, notwithstanding a rule of the pension system that the equity in such contracts should inure to the benefit of the pension fund, since the insured employee's death immediately wiped out the cash surrender equity of the policy.

**4. Same: Insurance § 26—**

Any rule of a pension system which would, upon the voluntary termination of the employment by an employee-member, change the beneficiary or divert the proceeds of a life and retirement policy purchased for his benefit from the beneficiary named therein to the pension fund, would be of doubtful validity, since the pension system would not have an insurable interest in the life of such employee. Sec. 2½, Chapter 283, Session Laws of 1951 (G.S. 58-204.3) was not enacted until after the death of the insured in the instant case.

**5. Money Received § 1—**

Evidence and pretrial stipulations disclosing that an insured employee, after voluntarily leaving the employment, died while a pension fund policy on his life was still in full force and effect, that insurer had paid the full amount of the policy, but that the trustee of the pension fund had retained one-half the proceeds, make out a *prima facie* case for money had and received in favor of the beneficiary named in the policy as against the trustee of the pension fund for the part of the proceeds retained.

**6. Trial § 24a—**

Where plaintiff's own evidence establishes an affirmative defense set up by defendant, nonsuit is proper.

**7. Accord and Satisfaction § 1—**

An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considers himself entitled to; and a satisfaction is the execution or performance of such agreement.

**8. Same: Compromise and Settlement § 1—**

Whether the acceptance of an amount less than that which plaintiff asserts is due her, operates as a compromise and settlement, depends upon the intent of the parties as expressed in their acts and statements at the

time of the acceptance of the lesser amount, and nonsuit is improperly granted on the theory of accord and satisfaction unless such intent is the only reasonable inference deducible from the evidence and stipulations of the parties.

**9. Same—Evidence held to raise question for jury as to whether parties intended acceptance of lesser amount to constitute settlement.**

Plaintiff was the beneficiary named in a policy of life and retirement insurance purchased under a pension fund system. The insured employee died after voluntarily leaving the employment, but while the policy remained in full force and effect. The insurer paid the full amount of the policy, but the trustee of the pension fund retained one-half and turned over to plaintiff only the other one-half of the proceeds, and plaintiff signed a receipt therefor. The receipt did not state that the sum was accepted in full settlement of her claim, and plaintiff testified that at the time she received the money, she did not intend to abandon any right she might have in the full proceeds of the policy. *Held:* The evidence does not establish, as the sole reasonable inference deducible therefrom, intent on the part of the parties that the acceptance of one-half the proceeds of the insurance should discharge any further obligation to the plaintiff, and therefore nonsuit upon defendant's affirmative defense of accord and satisfaction was error.

APPEAL by plaintiff from *Clarkson, J.,* at November Term, 1954, of SCOTLAND.

Civil action for money had and received.

The plaintiff alleges in her complaint that the defendant is a banking corporation with trust department; that the plaintiff was the sole beneficiary of a life insurance policy issued 2 January, 1948, by the National Life Insurance Company on the life of Lawrence Wheeler Allgood; that while the policy was in force, Lawrence Wheeler Allgood died on 26 February, 1950; that the plaintiff filed proof of death and the Insurance Company issued its check on 3 May, 1950, payable to the plaintiff and the defendant in the sum of $12,659; that on 9 October, 1950, the plaintiff and the defendant endorsed and cashed the check, at which time the defendant delivered to the plaintiff only one-half the proceeds, $6,329.50; that thereafter the plaintiff made demand on the defendant for the balance of the proceeds of the check, but the defendant refused to make payment.

The defendant does not deny receipt of the check and payment to the plaintiff of only half the proceeds. However, by answer the defendant alleges that at the time the insurance policy was written on the life of Lawrence Wheeler Allgood he was an employee of the Bladenboro Cotton Mills, Inc., hereinafter referred to as the Mill, and that the insurance policy was issued in connection with the Mill's pension trust retirement system. And as further defenses the defendant alleges: (1) that because of failure on the part of the insured to comply with the rules

and regulations under which the pension system was established and is operated, the plaintiff was not entitled to the proceeds of the insurance policy, and (2) that in any event, after the Insurance Company issued its check to the plaintiff and the defendant for the full death benefits, to wit, $12,659, the parties agreed to and did divide the moneys half and half between them, and this agreement and the alleged settlement made pursuant thereto are specifically pleaded in bar of plaintiff's right of recovery.

The plaintiff by reply denies that any rule of the retirement system renders her ineligible to receive the death benefits or modifies the terms of the insurance policy "so as to make any person other than the plaintiff . . . entitled to any portion of the proceeds of the policy." The plaintiff further denies that she entered into any agreement or settlement by which she took one-half the proceeds in full settlement of her claim. However, she alleges that if any such agreement or settlement should be found against her, then and in that event, it was induced by fraud.

Certain pretrial stipulations were entered into by the parties. The stipulations disclose these facts in respect to the retirement system: The system was established in December, 1944, for the salaried employees of the Mill. An employee is not eligible for membership until he has been in the employ of the Mill for a period of three years or more. The funds on which the system operates are contributed by the Mill on a voluntary basis, but with provision that no part of the *corpus* or income shall revert to the Mill. No contributions are made by the employee-members of the system. The system is administered by a pension board of three members elected by the Board of Directors of the Mill. The Wilmington Savings & Trust Company is designated as trustee of the funds of the system, with direction that the assets be held as a special trust for the exclusive benefit of the employee-members and beneficiaries, to be administered by the Pension Board in accordance with the established rules and regulations. The rules and regulations provide for the purchase of insurance contracts and annuities so as to furnish the employee-members of the system ordinary life insurance protection, with retirement benefits maturing at age 65. However, the rules provide that: "Any member of the pension system voluntarily leaving the employ of the Company (except for disability or reasons beyond the control of the employer or employee) shall thereupon cease to be a member of the system and shall receive no benefits from the pension fund nor from any annuity or other contract purchased for his benefit. The equity in any such contracts shall thereupon inure to the benefit of the Pension Fund and shall be used for the benefit of the other

members of the System in proportion to the amounts of money contributed for the benefit of such other members of the System, . . ."

The plaintiff's evidence and the pretrial stipulations disclose these further facts: that the insured, Lawrence Wheeler Allgood, was employed in February, 1944, by the Mill and left its employ in August, 1949. He was a member of the pension trust system from December, 1947, until he left the Mill's employ. He died 26 February, 1950. At the time of his death there was in force a life insurance policy issued by the National Life Insurance Company, procured by the defendant Trustee, insuring his life in the amount of $12,659, and naming his wife, the plaintiff herein, as the sole beneficiary, contingent only upon survivorship. Proof of death was duly filed by the plaintiff, as a result of which the Insurance Company issued its check, dated 29 March, 1950, in the amount of $12,659, in payment of the full death benefits, the check being made payable to the order of the plaintiff and the defendant. The check, endorsed by the plaintiff and the defendant, was deposited for collection in the defendant Bank on 9 October, 1950, and was paid in due course. The Bank issued its check to the plaintiff in the amount of $6,329.50 for one-half the insurance moneys. She endorsed the check and collected the proceeds. The other half of the insurance moneys was retained by the defendant Bank in its trust department.

The plaintiff's testimony tends to show these further facts in respect to the division of the proceeds of the insurance moneys: After numerous inquiries the plaintiff learned that the check from the Insurance Company was in possession of the Pension Board at the Mill. She made this discovery about 1 October, 1950. Several days thereafter, a member of the Pension Board phoned her from Bladenboro and arranged for a conference. It was held a few nights later. Two members of the Pension Board came for the conference and met with the plaintiff and her father at his home in Laurinburg. The members of the Board brought with them the documents comprising the rules and regulations of the pension trust system and the trust agreement under which the system is administered. The plaintiff had never seen these documents before. One member of the Pension Board proceeded to read from the documents. Plaintiff said, "It was confusing . . ." From time to time the reading was halted while the other member of the Board explained that the plaintiff was not entitled to any of the insurance moneys. As she put it: "Every few minutes he would get that in. 'You see, Mrs. Allgood, you are not entitled to a cent of it.' At this time, I said to him, 'Well, it seems to me that I am,' and he said, 'But we want to give you some of it, just for good will.' . . . finally we just told him to stop (reading). We didn't understand it anyway. . . . All I knew was what they were telling me, . . . that was all I had to go on . . . the insur-

ance policy had not been in my possession, . . . and he said, 'We're willing to give you half of it.' I thought I'd better take that rather than none." She further said she made "that agreement" because of "what he told me. . . . (that) I wasn't entitled to any of it. . . . that the only way I might get anything would be to sue for it and . . . that will take a year or two, and the lawyers will get half, . . . so you might as well take half and give us the other half."

Two days after the conference in her father's home, the plaintiff went to Bladenboro and there joined a member of the Pension Board and went with him to Wilmington where the insurance check was being held by the defendant Bank, trustee of the pension fund. On arrival, she endorsed the insurance check and in turn received the Bank's check for half the proceeds, $6,329.50, and signed a receipt therefor. The receipt appears on the bottom of a letter written by members of the pension system to the defendant Bank authorizing it to dispose of the $12,659 proceeds of the insurance check by paying one-half to the plaintiff and crediting the pension trust with the other half. The receipt signed by the plaintiff at the bottom of the letter, under the signatures of the writers of the letter, is in words and figures as follows:

> "Rec. $6329.50 as set forth above.
> (signed)   Frances McCormick Allgood
> Oct. 9th 1950."

Further testimony of the plaintiff: "I signed this (the receipt) at the request of Mr. Rogers (member of the Pension Board), and I just signed it saying I received that much of the money, and I again made the statement at that time that I thought I was entitled to all or none. Mr. Rogers again told me that he thought it was a very satisfactory agreement. Since I gave receipt for the check in the sum of $6,329.50, I made demand upon the bank for the balance, and they have not as yet returned it to me."

Cross-Examination: ". . . I knew I was receiving half of the total life insurance check and that the pension fund was receiving the other half. . . . Mr. Rogers told me that what I was doing was carrying out the agreement that all the members of the Pension Trust had agreed that he would pay me one-half the check and one-half would go to the Pension Trust."

Redirect Examination: "Q. I understood you to tell Mr. Henry on cross-examination that you understood that you were taking one-half of it. Will you state the reason why you took half of these funds? A. Because I thought that I wasn't going to get anything. I thought I was entitled to all of it, but it looked like they wouldn't let me have all of it,

and they were just going—they claimed they were just giving it to me, and that's the reason I took it. . . .

". . . At the time I received these funds at the bank from Mr. Rogers, I didn't intend to abandon any right that I might have had in the full proceeds of the insurance policy on the life of my husband. Thereafter, I employed counsel and filed the suit."

At the close of the plaintiff's evidence, the defendant moved for judgment as of nonsuit. The motion was allowed, and from judgment entered in accordance with such ruling, the plaintiff appeals.

*Joe M. Cox and Phillips & McCoy for plaintiff.*
*Varser, McIntyre & Henry for defendant.*

JOHNSON, J. The first question posed by this appeal is whether the plaintiff made out a *prima facie* case of money had and received.

An action for money had and received may be maintained as a general rule "whenever the defendant has money in his hands which belongs to the plaintiff, and which in equity and good conscience he ought to pay to the plaintiff. . . . The plaintiff is entitled to recover when it appears that the money in question belonged to the plaintiff and was secured by the defendant without the consent of the plaintiff, or if with his consent, without consideration." *Wilson v. Lee,* 211 N.C. 434, 436, 190 S.E. 742. Recovery is allowed upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another. Therefore, the crucial question in an action of this kind is, to which party does the money, in equity and good conscience, belong? The right of recovery does not presuppose a wrong by the person who received the money, and the presence of actual fraud is not essential to the right of recovery. The test is not whether the defendant acquired the money honestly and in good faith, but rather, has he the right to retain it. In short, "the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the test of natural justice and equity to refund the money." *Moses v. MacFerlan,* 2 Burrow, 1005, 97 Eng. Reprints, 676. See also *Hicks v. Critcher,* 61 N.C. 353; *Bahnsen v. Clemmons,* 79 N.C. 556; *Wilson v. Lee, supra; Sparrow v. Morrell & Co.,* 215 N.C. 452, 2 S.E. 2d 365; *Harrington v. Lowrie,* 215 N.C. 706, 2 S.E. 2d 872; 4 Am. Jur., Assumpsit, Sec. 4; 58 C.J.S., Money Received, Sec. 4; 17 C.J.S., Contracts, Sec. 6.

The plaintiff insists that her evidence and the pretrial conference stipulations support the allegations of her complaint and make out a *prima facie* case of money had and received. She relies on the evidence and stipulations tending to show these facts: (1) that at the time of the death of her husband, Lawrence Wheeler Allgood, the life insurance

policy naming her as sole beneficiary was in force; (2) that proof of death was duly filed; (3) that the Insurance Company issued its check in the amount of $12,656 in payment of the full death benefits, the check being made payable to the order of the plaintiff and the defendant; (4) that the check, endorsed by the plaintiff and the defendant, was deposited for collection in the defendant Bank and was paid in due course; (5) that the defendant Bank paid the plaintiff only half of the insurance moneys, and retained the other half in its trust department for the credit of the pension trust system, and has refused to pay same over to the plaintiff after due demand.

On the other hand, the defendant insists that the plaintiff's evidence and the pretrial stipulations establish conclusively as a matter of law that the plaintiff was not entitled to any of the proceeds of the insurance policy because of failure on the part of the insured to comply with the rules and regulations under which the pension system was operated and under which the insurance policy was procured. In support of its contention, the defendant relies upon the provision which provides that when any member of the pension system voluntarily leaves the employ of the Mill he thereupon ceases to be a member of the system and "shall receive no benefits from the pension fund nor from any annuity or other contract purchased for his benefit," and that the equity in any such contract shall thereupon inure to the benefit of the pension fund.

It is here noted that the insured voluntarily left the employ of the Mill several months before his death. Therefore, it must be conceded that the Pension Board had a right to cancel the insurance policy when he left the employ of the Mill and to collect for the benefit of the pension fund the cash surrender value of the policy. This the Pension Board or Trustee could have done at any time before the death of the insured. However, as it turned out, the policy was not so terminated, but was in full force and effect under an extended term provision when Allgood died in February, 1950. And it is significant that the rules and regulations of the pension trust system nowhere provide for any change of beneficiary upon the termination of the insured's employment, nor do the rules and regulations purport to make any provision, apart from those fixed in the policy, for the payment of death benefits where, as here, the policy is left in force and the death benefits mature and become payable before the normal lapse of the policy. Indeed, any provision in the rules and regulations for diverting death benefits from the policy beneficiary to the pension trust fund in a situation like the one here presented would have been of doubtful validity. This is so for the reason that the pension trust had no insurable interest in the life of a member of the pension system, and any regulation purporting to provide for the payment of insurance death benefits into the pension fund

would have been subject to challenge as a wagering contract contrary to public policy. ". . . an insurable interest exists where there is reasonable ground, founded on the relations of the parties to each other, either pecuniary or contractual or by blood or affinity, to expect some benefit or advantage from the continuance of the life of the insured; and unless there is a reasonable pecuniary interest, or a close tie by blood or marriage, justifying the expectation of benefit or advantage from the continued life of insured, a policy of insurance taken out on the life of another is condemned as one of wager for the purpose of speculating on the hazard of a life in which the beneficiary has no insurable interest." 44 C.J.S., Insurance, Sec. 203 (a), pp. 903, 904. See also *Burbage v. Windley*, 108 N.C. 357, 12 S.E. 839; *Trinity College v. Ins. Co.*, 113 N.C. 244, 18 S.E. 175; *Hinton v. Ins. Co.*, 135 N.C. 314, 47 S.E. 474; *Slade v. Ins. Co.*, 202 N.C. 315, 162 S.E. 734; *Crump v. Ins. Co.*, 204 N.C. 439, 168 S.E. 514; *Wharton v. Ins. Co.*, 206 N.C. 254, 173 S.E. 338; Appleman, Insurance Laws and Practice, Vol. 2, Sec. 762.

It is noted that the statute, Sec. 2½, Chapter 283, Session Laws of 1951, now codified as G.S. 58-204.3, declaring the trustee of a pension plan to have an insurable interest in the lives of the persons covered by the pension plan, was not enacted until after the death of the insured in the instant case.

It necessarily follows that the insurance policy, so far as it relates to death benefits, stands unaffected by the pension trust rules and regulations. Therefore, in no aspect of the case was the defendant, trustee of the retirement funds, entitled to the death benefits. Whereas the policy provisions plainly entitle the wife to all death benefits. Thus the conclusion is inescapable that the insured's death immediately wiped out the cash surrender equity of the policy and brought to maturity the full death benefits due his wife.

We conclude that the plaintiff's evidence when considered with the pretrial stipulations entered below supports the allegations of her complaint and is sufficient to make out a *prima facie* case of money had and received.

It is manifest that the nonsuit below must be held for error unless the plaintiff's evidence together with the pretrial stipulations establish as a matter of law the defendant's affirmative defense of accord and satisfaction under application of the principle explained by *Barnhill, J.* (now *C. J.*) in *Hedgecock v. Ins. Co.*, 212 N.C. 638, 641, 194 S.E. 86, 88: "When the plaintiff offers evidence sufficient to constitute a *prima facie* case in an action in which the defendant has set up an affirmative defense, and the evidence of the plaintiff establishes the truth of the affirmative defense as a matter of law, a judgment of nonsuit may be entered." See also *Jarman v. Offutt*, 239 N.C. 468, 80 S.E. 2d 248.

" 'An "accord" is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considered himself entitled to; and a "satisfaction" is the execution or performance, of such agreement.' " *Dobias v. White,* 239 N.C. 409, 413, 80 S.E. 2d 23, 27. See also Restatement, Contracts, Sec. 417; 1 Am. Jur., Accord and Satisfaction, Sec. 19; G.S. 1-540.

For the nonsuit to be sustained on the theory of an accord and satisfaction, it must appear from the evidence, as the only reasonable inference deducible therefrom, that the plaintiff contracted to accept the lesser sum paid her in settlement of her claim for all the insurance moneys. This would require unequivocal proof of intent on the part of the parties that the acceptance of half the proceeds should operate as a discharge of any further obligation to the plaintiff by the defendant. *Blanchard v. Peanut Co.,* 182 N.C. 20, 108 S.E. 332. This may be a permissible inference to be drawn from the evidence, but it is not the only reasonable inference deducible therefrom.

In *Blanchard v. Peanut Co., supra,* at p. 22, appears this pronouncement: " 'It is a well recognized principle here and elsewhere that when a dispute exists between two parties as to the amount of an account, and one sends another a check or makes a payment clearly purporting to be in full settlement of the claim, and the other knowingly accepts it, this will amount to an adjustment, and further action thereon is precluded. It is a question, however, of the intent of the parties, as expressed in their acts and statements at the time, and unless, on the facts in evidence, this intent is so clear that there could be no disagreement about it among men of fair minds, the issue must be decided by the jury.'

"In the case at bar, we do not think it appears unequivocally that the check was sent on condition that its acceptance should amount to a settlement in full, or as a complete discharge of the debt. This may be a permissible view to take of the evidence, but not necessarily the only one. The sending of the check to cover what the defendant claimed was the balance due on the account does not *ipso facto* show conclusively that an accord and satisfaction was the condition annexed to its acceptance. The ultimate fact can only be determined by a jury under proper instructions from the court."

In *McCullen v. Hood,* 14 N.C. 219, there was a plea of accord and satisfaction where plaintiffs' heirs were suing the defendant administrator of their ancestor's estate for rents unaccounted for. The plea was based on a receipt given to defendant by plaintiffs' guardian, which read as follows: "Received of Britain Hood, as next friend to the heirs of Asher McCullen, deceased, the following notes of hand, for rent of

lands, etc., . . ." No other evidence was offered. The trial court left it with the jury to determine whether the notes were received as an accord and satisfaction or as a discharge *pro tanto*. The jury found for plaintiff. This Court held that the receipt, not stating it to be payment in full, was not in itself sufficient evidence to support the plea of accord and satisfaction. See also *Grant v. Hughes*, 96 N.C. 177, top p. 191, 2 S.E. 339, 345.

In *Armstrong v. Lonon*, 149 N.C. 434, 63 S.E. 101, the Court held it to be a jury question whether a discharge of all indebtedness resulted from creditor's endorsement of a check marked "in full to date." The Court said: "The check indicated on its face that it was sent in full payment to date thereof and while this is not, under the circumstances of this case, conclusive, yet the receipt of it by the plaintiffs, their endorsement of it and retention of the money, *is sufficient evidence to go to the jury* that it was sent and received as a full payment and discharge of all indebtedness of defendant to plaintiffs, and so intended." (Italics added.)

In *Rosser v. Bynum*, 168 N.C. 340, 84 S.E. 393, the headnote adequately states the rule enunciated: "A check given and received by the creditor which purports to be in full of account to date does not conclude the creditor, accepting it, from showing that in fact it was not in full, unless under the principles of accord and satisfaction, there had been an acceptance of the check in settlement of a disputed account." In the opinion *Hoke, J.*, speaking for the Court, said: "It is well recognized that when, in case of a disputed account between parties, a check is given and received clearly purporting to be in full or when such a check is given and from the facts and attendant circumstances it clearly appears that it is to be received in full of all indebtedness of a given character or all indebtedness to date, the courts will allow to such a payment the effect contended for. . . . (authorities cited) . . . A proper consideration of these and other cases on the subject will disclose that such a settlement is referred to the principles of accord and satisfaction, and unless the language and the effect of it is clear and explicit it is usually a question of intent, to be determined by the jury." See also *Walker v. Burt*, 182 N.C. 325, 109 S.E. 43; *Lochner v. Sales Service*, 232 N.C. 70, 59 S.E. 2d 218; *Dixie Lines v. Grannick*, 238 N.C. 552, 78 S.E. 2d 410.

In the case at hand, while the plaintiff testified "I thought I'd better take that (the half offered) rather than nothing," and "I knew I was receiving half of the total life insurance check and that the pension fund was receiving the other half," nevertheless, she said on redirect examination, "At the time I received these funds at the bank from Mr. Rogers, I didn't intend to abandon any right that I might have had in the full

proceeds of the insurance policy on the life of my husband. . . ." And it is noted that the written receipt she signed nowhere expressly states that the sum received by her was accepted in full settlement of her claim.

We conclude that the plaintiff's evidence does not establish the defendant's affirmative defense of accord and satisfaction as a matter of law. On this record it is an open question for the jury. *Blanchard v. Peanut Co., supra; Winkler v. Amusement Co.*, 238 N.C. 589, 598, 79 S.E. 2d 185, 192; 1 Am. Jur., Accord and Satisfaction, Sections 22 and 78; 1 C.J.S., Accord and Satisfaction, Sec. 49 (b). In this view of the case, we do not reach for decision the question of the sufficiency of the evidence to support the issue of fraud raised by the plaintiff's reply.

The judgment of nonsuit entered below is
Reversed.