An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1073

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

CRAIG HENSEL,
     Plaintiff

v.

Guilford County
No. 13 CVS 4734

XEROX BUSINESS SERVICES, LLC, d/b/a
ACS, a XEROX COMPANY, d/b/a ACS, d/b/a
ACS@XEROX, LLC, d/b/a AFFILIATED
COMPUTER SERVICES, LLC, and d/b/a
AFFILIATED COMPUTER SERVICES, INC.,
     Defendant


Appeal by plaintiff from order entered 18 July 2013 by Judge Lindsay R. Davis, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 4 February 2014.

*Hensel Law, PLLC, by Craig Hensel, pro se.*

*Carruthers & Roth, P.A., by Rachel S. Decker, for Defendant.*

ERVIN, Judge.

Plaintiff Craig Hensel appeals from an order granting a motion for judgment on the pleadings filed by Defendant Xerox Business Services, LLC, d/b/a ACS, a Xerox Company, d/b/a ACS, d/b/a ACS@Xerox, LLC, d/b/a Affiliated Computer Services, LLC, and d/b/a Affiliated Computer Services, Inc. On appeal, Plaintiff argues that the trial court erred by entering judgment

on the pleadings in favor of Defendant on the grounds that the pleadings revealed the existence of a number of factual issues sufficient to preclude the entry of judgment in Defendant's favor; that Plaintiff had sufficiently pled claims for a declaration that the parties had entered into an accord and satisfaction and breach of contract; and that nothing in the parties' pleadings supported a determination that Plaintiff had breached the duty of good faith and fair dealing. After careful consideration of Defendant's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

Plaintiff obtained several student loans in a total face amount in excess of $90,000.00 from Access Group, Inc., which are serviced by Defendant. On or about 30 November 2012, Defendant sent Plaintiff two bills for late fees in the total amount of $68.28. On 9 December 2012, Plaintiff sent a letter, accompanied by a check drawn in the amount of $68.28, to Defendant at the address shown on the face of the invoice in which he asserted that Defendant had unlawfully assessed late fees against him in violation of the Federal Fair Debt Collection Practices Act and that Defendant's conduct had

injuriously caused a delay in the closing of a residential purchase that Plaintiff was in the process of making, resulting in the necessity for Plaintiff to pay a daily fee in order to preserve his right to complete the transaction. As a result, Plaintiff proposed that his dispute with Defendant be resolved based on an agreement under which Defendant would, in return for the transmission of the enclosed $68.28 check and his commitment to refrain from instituting civil litigation against Defendant, forgive the balance due under all of his outstanding loans held by, serviced by, or originating from Defendant; indemnify him from any claims resulting from these loans; agree that any future litigation arising from the original loan agreements or any subsequent modifications would take place in Guilford County; and agree to refrain from taking any action that would negatively impact Plaintiff's credit rating. According to Plaintiff, Defendant could accept his offer to enter into this agreement by "silence or acceptance of the enclosed payment," with the check in question having been tendered "exclusively for the settlement of the matter using the above terms." On 18 December 2012, the check which accompanied Plaintiff's 9 December 2012 letter was deposited into an account held by ACS Education Services.

On or about 31 December 2012, Defendant sent Plaintiff a statement in which the $68.28 check that accompanied Plaintiff's letter had been applied to the balances of Plaintiff's accounts, which were otherwise unaltered. Although Plaintiff paid the amount requested in the December statement on 18 January 2012, he included a letter with his payment indicating that his actions in paying the 31 December 2012 invoice should not be treated as an acknowledgement that he owed anything on the underlying notes and represented, instead, an action taken to maintain his credit score.

On 17 February 2013, Defendant sent another statement that failed to reflect Plaintiff's January payment and indicated that Plaintiff's account had become delinquent. On 24 February 2013, Plaintiff corresponded with Defendant for the purpose of contesting the existence of any debt on the basis of the "Contract" set out in his 9 December 2012 letter. On 28 February 2013, Defendant transmitted another statement to Plaintiff that reflected the making of the 18 January 2013 payment and reiterated Defendant's contention that Plaintiff's account was delinquent. After Plaintiff contacted Defendant by phone on a number of occasions in March 2013 for the purpose of contending that his debt had been forgiven based on the arrangement proposed in his 9 December 2012 letter, Defendant

returned the $68.28 payment that Plaintiff had made to Defendant in connection with the transmission of the 9 December 2012 letter.

## B. Procedural History

On 9 April 2013, Plaintiff filed a complaint in which he sought a declaration that the parties had entered into a contract and alleged that Defendant had breached the contract in question. On 5 June 2013, Defendant filed an answer in which it denied the material allegations of Plaintiff's complaint and asserted a number of affirmative defenses, including lack of consideration, breach of the covenant of good faith and fair dealing, non-compliance with the provisions of the notes which underlay Plaintiff's claims, failure to mitigate damages, and failure to provide proper notice. On the same date, Defendant filed a motion seeking the entry of judgment on the pleadings in its favor. On 18 July 2013, the trial court entered an order granting Defendant's motion. Plaintiff noted an appeal to this Court from the trial court's order.

## II. Substantive Legal Analysis

### A. Standard of Review

"A motion for judgment on the pleadings is authorized by Rule 12(c) of the North Carolina Rules of Civil Procedure." *Garrett v. Winfree*, 120 N.C. App. 689, 691, 463 S.E.2d 411, 413

(1995); N.C. Gen. Stat. § 1A-1, Rule 12(c). "The rule's function is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). "Judgment on the pleadings is properly entered only if 'all the material allegations of fact are admitted[,] . . . only questions of law remain' and no question of fact is left for jury determination." *N.C. Concrete Finishers v. N.C. Farm Bureau*, 202 N.C. App. 334, 336, 688 S.E.2d 534, 535 (2010) (quoting *Ragsdale,* 286 N.C. at 137, 209 S.E.2d at 499).

> "In deciding [a motion for judgment on the pleadings], the trial court looks solely to the pleadings. The trial court can only consider facts properly pleaded and documents referred to or attached to the pleadings." "This Court reviews *de novo* a trial court's ruling on motions for judgment on the pleadings. Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court."

*N.C. Concrete Finishers*, 202 N.C. App. at 336-37, 688 S.E.2d at 535 (quoting *Reese v. Mecklenburg County*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 37-38 (2009), *disc. review denied*, 364 N.C. 242, 698 S.E.2d 653 (2010)) (internal citations omitted). We will now utilize the applicable standard of review to evaluate the validity of Plaintiff's challenges to the trial court's order.

## B. Validity of the Trial Court's Order

The essential gist of Plaintiff's challenge to the trial court's decision to grant judgment on the pleadings in favor of Defendant is that he had successfully asserted a claim for breach of contract against Defendant arising from the transmission of the 9 December 2012 letter to Defendant, in which he proposed a settlement of their alleged dispute, and the subsequent cashing of the accompanying check, and that the trial court erred by reaching a contrary conclusion. In essence, Plaintiff claims that the 9 December 2012 letter constituted an offer to form a contract between Defendant and himself, which Defendant accepted by cashing the accompanying check, and that Defendant's actions in subsequently transmitting invoices seeking payment of amounts inconsistent with the parties' alleged agreement constituted a breach of the December 2012 "contract." Although we agree that Plaintiff did, in fact, sufficiently allege the "facts" upon which he relies in support of this argument, we do not believe that those "facts" adequately support the assertion of any contract-based claim against Defendant.[1]

---

[1]Admittedly, Plaintiff asserts claims for both the entry of a declaratory judgment to the effect that the parties had entered into a valid contract and for breach of contract in his complaint. However, both claims rest upon a contention that the parties formed a valid contract as the result of the

"It is well established that a valid contract comes into existence only where the parties involved mutually assent to the same agreement." *Elliott v. Duke University, Inc.*, 66 N.C> App. 590, 595, 311 S.E.2d 632, 636, *disc. review denied*, 311 N.C. 754, 321 S.E.2d 132 (1984). If any portion of the proposed terms is not settled, there is no agreement." *Goeckel v. Stokely*, 236 N.C. 604, 607, 73 S.E.2d 618, 620 (1952) (citations omitted). "Where one party simply believes that a contract exists, but there is no meeting of the minds, the individual seeking to enforce the obligation upon a contract theory is without a remedy." *Elliott*, 66 N.C. App. at 595, 311 S.E.2d at 636 (citing *Brown v. Williams*, 196 N.C. 247, 250, 145 S.E. 233, 234 (1928)).

As the parties have acknowledged, an agreement of the nature that Plaintiff alleges to have existed in this instance is typically referred to as an accord and satisfaction.

> An "accord" is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considered himself entitled to; and a "satisfaction" is the execution or

transmission of the 9 December 2012 letter and the cashing of the accompanying check. As a result, a conclusion that Plaintiff had not alleged the existence of a valid contract would suffice to defeat both of the claims asserted in his complaint.

performance of such agreement.

*Sharpe v. Nationwide Mut. Fire Ins. Co.*, 62 N.C. App. 564, 565, 302 S.E.2d 893, 894, (quoting *Allgood v. Wilmington Savings & Trust Co.*, 242 N.C. 506, 515, 88 S.E.2d 825, 830-31 (1955)), *cert. denied*, 309 N.C. 823, 310 S.E.2d 353 (1983).  However,

> The word "agreement" implies the parties are of one mind—all have a common understanding of the rights and obligations of the others— there has been a meeting of the minds. . . . Agreements are reached by an offer by one party and an acceptance by the other.  This is true even though the legal effect of the acceptance may not be understood.

*Prentzas v. Prentzas*, 260 N.C. 101, 103-04, 131 S.E.2d 678, 680-81 (1963) (citations omitted).  For that reason, "establishing an accord and satisfaction . . . as a matter of law requires evidence that permits no reasonable inference to the contrary and that shows the 'unequivocal' intent of one party to make and the other party to accept a lesser payment in satisfaction . . . of a larger claim."  *Moore v. Frazier*, 63 N.C. App. 476, 478-79, 305 S.E.2d 562, 564 (1983) (citing *Allgood*, 242 N.C. at 515, 88 S.E.2d at 831).  "Although the existence of accord and satisfaction is generally a question of fact, 'where the only reasonable inference is existence or non-existence, accord and satisfaction is a question of law and may be adjudicated [summarily] when the essential facts are made clear of record.'" *Zanone v. RJR Nabisco, Inc.*, 120 N.C. App. 768, 771, 463 S.E.2d

584, 587 (1995) (quoting *Construction Co. v. Coan*, 30 N.C. App. 731, 737, 228 S.E.2d 497, 501, *disc. review denied*, 291 N.C. 323, 230 S.E.2d 676 (1976)), *disc. review denied*, 342 N.C. 666, 467 S.E.2d 738 (1996).

"[A] claim is not discharged [by accord and satisfaction by use of instrument] when the claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place."  N.C. Gen. Stat. § 25-3-311(c).  According to Section L, Subsection 2, of the Application and Loan Agreements under which Plaintiff procured the student loan debt at issue in this case,[2] "[Borrower] will not send [Lender] any partial payments marked 'paid in full,' 'without recourse' or with similar language unless those payments are marked for 'special handling' and sent to:  Access Group, P.O. Box 7400, Wilmington, DE 19803-0400."  As a result of the fact that Defendant is an organization

---

[2]As a result of the fact that these agreements were attached to the pleadings, they are properly before us.

entitled to take advantage of the protections afforded by N.C. Gen. Stat. § 25-3-311(c) and the fact that the undisputed information contained in the pleadings establishes that Plaintiff sent the 9 December 2012 letter and the accompanying check to an address other than that specified in the application and loan agreement,[3] the undisputed factual information contained in the pleadings establishes that Plaintiff's claim to have entered into an accord and satisfaction with Defendant as a result of the transmission of the 9 December 2012 letter and the cashing of the accompanying check is barred by N.C. Gen. Stat. § 25-3-311(c).

In an attempt to persuade us to reach a contrary result, Plaintiff argues that the 9 December 2012 letter and accompanying check clearly proposed the entry of a new contract;

---

[3]As we have already noted, the 9 December 2012 letter and accompanying check were sent to the address shown on the front of the invoices that Plaintiff received from Defendant. According to the invoices contained in the record that Plaintiff received from Defendant around the relevant period of time, "[a]ny correspondence other than payments should be sent to the address listed on the back of this statement." Although Plaintiff has contended in his brief that the address shown on the back of the invoices in question was identical to the address shown on the front of those documents, he has not presented us with copies of the relevant documents or explained why any information contained on the face of the invoices that he received from Defendant supersedes the explicit provisions of the application and loan agreements that evidence the underlying debt at issue here, particularly given that the applications and loan agreements specifically state in bold-faced type that "you may change the terms of this agreement only by another written agreement."

that the check that accompanied the 9 December 2012 letter stated that it was "exclusively for the settlement of [Plaintiff's loans and potential legal action against Defendant];" and that, although, Defendant applied the check that accompanied the 9 December 2012 letter against the balance owed on Plaintiff's account, it continued to send Plaintiff monthly invoices and ultimately refunded $68.28 to Plaintiff upon learning of Plaintiff's contention that the parties had entered into a new agreement. Based upon these facts, Plaintiff argues that "[t]here was no possibility that an observer opening the letter could think that the enclosed check was for anything other than the purpose of settling a claim using the terms of the letter." **[PB14]** In essence, Plaintiff appears to be arguing that the pleadings support a determination that he entered into an accord and satisfaction with Defendant that is effective under the common law of contract. Assuming, without deciding, that the facts alleged in the pleadings, when taken in the light most favorable to Plaintiff, do tend to show that the parties entered into an agreement that would otherwise constitute an accord and satisfaction that was valid under the common law, Plaintiff has not cited any authority to the effect that the underlying transaction between the parties did not involve a negotiable instrument subject to the provisions of

N.C. Gen. Stat. § 25-3-311(c), and we have not identified any such authority in the course of our own research. As a result, given that Defendant was entitled to rely on the protections afforded by N.C. Gen. Stat. § 25-3-311(c) and that there has been no showing that Plaintiff complied with that statutory provision in the course of his dealings with Defendant, we hold that the pleadings, when taken in the light most favorable to Plaintiff, do not tend to show that he has asserted a viable claim against Defendant, a determination that necessitates a conclusion that the trial court correctly granted Defendant's motion for judgment on the pleadings.[4]

## III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Plaintiff's challenges to the trial court's judgment have merit. As a result, the trial court's judgment should be, and hereby is, affirmed.

AFFIRMED.

Judges McGEE and STEELMAN concur.

---

[4]Although the applications and loan agreements under which Plaintiff procured the loans at issue in this case specifically provide that disputes arising under those agreements are to be governed by the laws of Ohio, the parties to this proceeding have based their arguments before this Court on North Carolina, rather than Ohio, law. As a result, our decision in this case rests upon the law of this jurisdiction rather than that of Ohio, about which we have received only limited information from the parties.

Report per Rule 30(e).