William F. THOMAS et al., Plaintiffs,

v.

PETRO–WASH, INC., et al., Defendants.

No. C–74–277–WS.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

March 23, 1977.

---

C. Edwin Allman and Richard B. Howington, Winston-Salem, N. C., for plaintiffs.

John J. McKay, Jr., Greenville, S. C., and William Kearns Davis, Winston-Salem, N. C., for Petro-Wash and Automatic Car Wash.

William R. Slye, New York City, and Norwood Robinson and George L. Little, Jr., Winston-Salem, N. C., for Texaco.

## MEMORANDUM AND ORDER

GORDON, Chief Judge.

This matter is before the Court for a determination of the defendants' motion for summary judgment. For the reasons that follow the motion is denied.

Plaintiffs, owners of a car wash and gasoline sales facility, allege that certain arrangements entered into between them and the defendants during 1966 through 1968 violated the federal and state antitrust laws, and further, that their business was injured as a result of these alleged violations.

Specifically, the plaintiffs allege that the defendants conspired, by the use of a lease-leaseback agreement, to tie the sale of gasoline and financial assistance to the sale of certain car wash equipment. The plaintiffs claim that these actions violate Section 1 of the Sherman Act (15 U.S.C. § 1) which prohibits contracts or conspiracies in restraint of trade or commerce among the several states, and Section 3 of the Clayton Act (15 U.S.C. § 14) which prohibits, in the course of commerce, the sale or lease of goods on the condition that the lessee or purchaser not deal in goods of a competitor of the lessor or seller where the effect of such lease or sale may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

On August 28, 1975, the defendant, Texaco, Inc., filed a motion for summary judgment based on the following grounds: (1) that the action is barred by the statute of limitations, (2) that the complaint fails to state a claim against it upon which relief can be granted, and (3) that the claims against it are barred by collateral estoppel and *res judicata.*

On September 9, 1975, the defendants, Petro-Wash, Inc., and Automatic Car Wash Equipment Co., filed a motion for summary judgment based upon the same grounds set forth in the motion for summary judgment filed by the defendant Texaco on August 28, 1975.

### Statute of Limitations

The defendants contend that the plaintiffs' claims are barred by the statute of limitations. Section 15b, Title 15 of the United States Code provides, that any action to enforce any cause of action under section 15 or 15a shall be forever barred unless commenced within four years after the cause of action accrued. This action was commenced on September 9, 1974. Therefore, it is necessary to determine whether the plaintiffs' cause of action accrued within four years prior to the institution of this suit.

Generally, a cause of action accrues and the statute of limitations begins to run when a defendant commits an act that injures the plaintiffs' business. The parties agree with this general statement of the law, however, the parties disagree as to what constitutes an "act" sufficient to start the running of the statute. The defendants contend that the last overt act connecting them with the alleged conspiracy occurred in 1968 with the signing of the lease-leaseback agreement. The plaintiffs, on the other hand, contend that the sale of gas pursuant to that agreement, the collection of rents and the institution of suit by the defendants to collect on amounts due under the agreement constitute overt acts which would start the statute running at a date subsequent to the signing of the agreement.

Each side, in support of their position, directs this Court's attention to the case of *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). In *Zenith,* the Court addressed the

question of when a cause of action accrues in the context of a continuing conspiracy to violate the antitrust laws. The Court observed that each time a plaintiff is injured by an act of the defendant a cause of action accrues to him to recover the damages caused by that act, and as to those damages, the statute of limitations runs from the commission of that act. Thus, if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action accrues to him to recover all damages incurred by that date. *Zenith, supra* at 338–339, 91 S.Ct. 795.

The plaintiffs have alleged a continuing conspiracy. The lease agreement represents the embodiment of that conspiracy. "It is well established that an action under Section 15 accrues when an overt act violative of the antitrust law is committed pursuant to the conspiracy . . ." *Braun v. Berenson*, 432 F.2d 538 (5th Cir. 1970). The plaintiff contends that the sale of gas under the lease agreement constitutes an overt act committed pursuant to the conspiracy of the defendants to violate the antitrust law. The Court agrees with this proposition. Therefore, when a private cause of action is based upon a continuous invasion of one's rights; i. e., the sale of gas, the plaintiffs' cause of action accrues from day to day as his rights are invaded to his damage. *Highland Supply Corp. v. Reynolds Metals Co.*, 327 F.2d 725 (8th Cir. 1964). To hold otherwise would mean that some damage that might have been sustained by the plaintiffs was barred before it accrued; that is, before the plaintiff sustained injury to his business due to the sale of gas pursuant to an unlawful agreement.

Therefore, it is concluded that the sale of gas pursuant to the lease-leaseback agreement constituted an overt act such that the statute of limitations would begin to run from the date of each individual sale. Furthermore, it is concluded that the filing of suit against the plaintiff on June 9, 1973, constituted an overt act for purposes of determining the running of the statute of limitations. *Weber v. Consumers Digest, Inc.*, 440 F.2d 729, 731 (7th Cir. 1971).

Additional support for the conclusion that the plaintiffs' claims are not barred by the statute of limitations is found in the *Zenith* case. In addition to standing for the proposition that the statute of limitations will begin to run from each overt act of the defendant, *Zenith* held that a plaintiff, in an antitrust action, may recover damages occurring within the statutory limitation period that are the result of conduct occurring prior to that period if, at the time of the conduct, those damages were speculative, uncertain, or otherwise incapable of proof. *Zenith, supra*, 401 U.S. at 338, 339, 91 S.Ct. 795. In *Railing v. United Mine Workers of America*, 445 F.2d 353 (4th Cir. 1971) the Fourth Circuit, considering the case on remand from the United States Supreme Court, stated that,

"*Zenith* holds that a cause of action accrues for the purposes of determining when a suit may be brought and also for the purpose of determining when the statute of limitations runs at the time that damage occurs . . . [a] single wrong may produce immediately ascertainable damages and also have a future speculative impact and potential injury. In such a situation the cause of action accrues and the period of limitations begins to run at different points in time, but in both instances at the time that the damages are ascertainable." *Railing, supra* at 354.

Any injury the plaintiff may have suffered as a result of the purchase of gas from the defendants under the lease agreement would be incapable of proof until after the date of the sale. Consequently, as to those damages, the statute of limitation would begin to run on the date of the sale and not on the date the agreement was entered into.

The defendant Texaco contends that even if this Court concludes that the statute of limitations is to run from the date of each sale of gas under the agreement, that it should still have the benefit of the statute of limitations inasmuch as its only connection with the plaintiffs ended in 1968 with the signing of the lease agreement.

This position overlooks the fact that the plaintiffs have alleged a conspiracy between all of the defendants to violate the antitrust law. Inasmuch as the actions of a co-conspirator will bind the other members of the conspiracy, Texaco's involvement did not terminate with the 1968 agreement, rather, for purposes of the statute of limitations, their involvement continues to the present. Therefore, it is the conclusion of this Court that the plaintiff's federal claims are not barred by the statute of limitations to the extent that they arose after September 9, 1970.

■ The North Carolina statute of limitations in an action for treble damages under the North Carolina antitrust laws is one year. N.C.Gen.Stat. § 1–54; *North Carolina Theatres, Inc. v. Thompson*, 277 F.2d 673 (4th Cir. 1960). In determining when the plaintiffs' cause of action accrues for purposes of applying the North Carolina statute of limitations the principles enunciated above are equally applicable. Additionally, North Carolina General Statute § 75–8 provides that continuing violations of the North Carolina antitrust laws, which continue into the future, shall result in a new cause of action in favor of the injured party each week during which the violation continues. Consequently, the North Carolina statute of limitations does not bar any damages which occurred subsequent to September 9, 1973.

### Res Judicata

The defendants contend that the plaintiffs' claims are barred by the doctrine of *res judicata* and collateral estoppel. On June 9, 1973, the defendant Petro-Wash filed suit against the plaintiff to recover past due rent and fuel purchases in the amount of $8,842.65. The plaintiff failed to answer in that action and a default judgment was entered against him on July 10, 1973. The plaintiff has paid this judgment in full.

### North Carolina Claims

■ The plaintiffs' North Carolina claims are not barred by *res judicata*. The doctrine of *res judicata* serves to bar only those claims which the plaintiff could have asserted against the defendant in the prior North Carolina litigation. For the reasons set forth in this Court's discussion of the statute of limitations question, it is concluded that the plaintiff has a new cause of action with the occurrence of each overt act or infliction of damage by the defendants' activity. Therefore, since the North Carolina statute of limitations is one year, and the suit brought by the defendant Petro-Wash occurred more than one year prior to this litigation, there is no sound reason why that state litigation should serve as a bar to these new claims which could never have been asserted in that prior state litigation.

### Federal Claims

The federal statute of limitations is four years. Therefore, it is necessary for this Court to determine whether the prior North Carolina litigation may serve as a bar to that portion of the plaintiffs' claim which accrued prior to the date of the North Carolina litigation.

■ Initially, it is this Court's conclusion that the doctrine of collateral estoppel has no applicability in this matter. The defendants contend that somehow the plaintiffs' claim is barred by the doctrine of collateral estoppel. The defendants claim that the estoppel arises out of the prior North Carolina default judgment. The Court disagrees with the defendants' proposition. The doctrine of collateral estoppel only applies to those questions actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action. *Cromwell v. County of Sac*, 94 U.S. 351, 352–253, 24 L.Ed. 195 (1877). In a default judgment no questions of fact are actually litigated. Therefore, as a general proposition, a default judgment has no collateral estoppel effect. In any event, a default judgment should be given the precise effect it merits. But it should not, in a subsequent suit on another cause of action be-

tween the parties, preclude the litigation of issues not litigated in the defaulted action, whether alleged or not. *Cromwell, supra* at 356, 24 L.Ed. 195. Consequently, the prior North Carolina litigation does not have any collateral effect upon the present controversy.

■ It is concluded that the state court proceedings, in which the defendant obtained a default judgment, are not a bar to the federal antitrust claim presented in the present action. The North Carolina court was without jurisdiction to hear a claim based upon the federal antitrust laws. *Blumenstock Bros. v. Curtis Pub. Co.*, 252 U.S. 436, 441, 40 S.Ct. 385, 64 L.Ed. 649 (1920); *Freeman v. Bee Machine Co.*, 319 U.S. 448, 451 n. 6, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943). Consequently, the default judgment obtained in the state court should not present any bar to the plaintiffs' present claim under the federal antitrust laws. *Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358, 363 (6th Cir. 1967); *Lyons v. Westinghouse Electric Corporation*, 222 F.2d 184, 189 (2d Cir. 1955) *cert. denied*, 345 U.S. 923, 73 S.Ct. 781, 97 L.Ed. 1354 (1953).

Therefore, for the reasons outlined above, the prior state litigation is not a bar to the present action brought by the plaintiffs.

*Claim for Relief—Commerce Requirement*

The defendants contend that the complaint fails to state a claim against it upon which relief can be granted in that it does not allege facts which satisfy the commerce requirements of the federal antitrust laws, and, as disclosed by the pleadings and deposition testimony and documents of the plaintiffs, cannot be amended to state a valid claim because of, among other things, the doctrine of laches and the waiver by and estoppel of plaintiffs of any right to assert such claims. The plaintiffs contend that they have alleged facts sufficient to satisfy the commerce requirement, and further, that such facts have not been sufficiently rebutted by the defendants such that summary judgment would be appropriate at this time. Moreover, the plaintiffs assert that if the Court is of the opinion

that the plaintiffs' complaint fails to state the necessary facts to support a claim under the antitrust laws that they should be permitted to amend their complaint so as to state a claim recognizable under the federal and state antitrust laws.

■ To invoke federal antitrust prohibitions a plaintiff must allege and prove that apparently local acts in fact have adverse consequences on interstate markets and the interstate flow of goods. *Gulf Oil Corp v. Copp Paving Co.*, 419 U.S. 186, 202, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).

The plaintiffs' basic allegations with respect to their contractual dealings with the defendants arise out of a tying arrangement created by the lease-leaseback agreement. The plaintiffs contend that the sale of gas was tied to the purchase of certain carwash equipment and financial assistance. The basic question for the Court to decide is whether this agreement has a substantial effect on trade or commerce among the several states (15 U.S.C. § 1 claim) or whether the defendants are engaged in commerce (15 U.S.C. § 14 claim). If the plaintiff has alleged sufficient facts to satisfy these requirements then it would not be proper to grant summary judgment on this ground unless the defendants have presented sufficient facts, other than a general denial in their answer, to establish the absence of the necessary effect on commerce.

■ The defendants strenuously argue that the burden is on the plaintiffs to "prove" that the commerce requirement has been met. This is obviously true when the plaintiffs are put to their proof at trial, however, such is not the case when the Court is ruling on a motion for summary judgment. A defending party is entitled to summary judgment when there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law. F.R.C.P. 56(c). Rule 56 further provides that an adverse party may not rest on the mere allegations in his pleadings. However, the plaintiff is not required to come forward with additional proof unless the

defendant first establishes that the facts are other than as alleged in the plaintiff's complaint. In the present case the defendants have not presented any facts or evidence tending to show that the commerce requirement has not been met other than by a general denial in their answer.

The plaintiffs have alleged an agreement and conspiracy in restraint of trade. The foundation of this claim is a lease-leaseback agreement which appears to tie the purchase of carwash equipment to the later purchase of gasoline. There are sufficient allegations in the plaintiffs' complaint to establish that the defendants are engaged in commerce and have acted in the course of such commerce. Therefore, absent a contrary showing on the part of the defendants, the plaintiffs are entitled to rest on the allegations in their complaint.

This ruling in no way alters the burden on the plaintiffs to come forward during the trial with proof of all the elements necessary to establish the existence of the commerce and interstate connection of the alleged antitrust activities of the defendants. However, at present, the plaintiffs' allegations are sufficient to withstand the defendants' unsupported motion for summary judgment.

### Claim for Relief

This action was brought by the plaintiffs, alleging injuries in their business resulting from an agreement, combination and conspiracy between the defendants which constitutes an unreasonable restraint of trade between the states, in violation of Section 1 of the Sherman Anti-Trust Act (15 U.S.C. § 1), and also constituting a violation of Section 3 of the Clayton Anti-trust Act (15 U.S.C. § 14) in that said arrangement substantially lessened and continues to lessen competition in the line of gasoline and automotive fuel sales and in the line of automatic carwash equipment sales. Additionally, plaintiffs have alleged that the actions of defendants constituted and still constitute a combination and conspiracy in restraint of trade or commerce in the State of North Carolina, in violation of N.C.Gen. Stat. § 75–1, constituted and still constitutes an unfair method of competition and an unfair and deceptive act and practice in violation of N.C.Gen.Stat. § 75–1.1, and is in direct violation of the provisions of N.C. Gen.Stat. § 75–5(b)(2).

The plaintiffs contend that the lease-leaseback arrangement contained a tying agreement whereby the plaintiffs were required to purchase all of their gasoline from the defendant Petro-Wash. Additionally, the plaintiffs allege that Petro-Wash stated that the only gasoline which they anticipated furnishing was Texaco gas. Plaintiffs contend that Texaco, Petro-Wash and Automatic Car Wash conspired to tie the sale of Texaco gasoline to the sale of car wash equipment and thereby violated the antitrust laws.

The defendants argue that the facts in this case are undisputed and that they are entitled to summary judgment. The plaintiffs contend that the facts are in dispute and that summary judgment would not be appropriate at this time.

The parties to this action have supplied the Court with briefs on the controlling law in the area of tying agreements. Moreover, each party contends that their interpretation of the law dictates that they should prevail on this motion for summary judgment.

The Court has examined the briefs filed in this action and has concluded that the facts in this case are to be evaluated in light of the decisions in *Fortner Enterprises v. U.S. Steel,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969); *International Salt Co. v. United States,* 332 U. S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); *McGeorge Car Co. v. Leyland Motor Sales, Inc.,* 504 F.2d 52 (4th Cir. 1974); *Advance Business Systems & Supply Co. v. SCM Corporation,* 415 F.2d 55 (4th Cir. 1969); *Osborn v. Sinclair Refining Company,* 324 F.2d 566 (4th Cir. 1963); *Phillips v. Crown Central Petroleum Corporation,* 395 F.Supp. 735 (D.Md.1975); and *Advance Business Systems & Supply Co. v. SCM Corporation,* 287 F.Supp. 143 (D.Md. 1968).

Contrary to the position of the defendants in this action, the material facts supporting recovery under the above-mentioned authorities are still in dispute. The defendants vigorously argue that the plaintiffs must prove each element of the case or else suffer summary judgment. This contention is incorrect. True, a plaintiff must prove each element of his case in order to recover, however, a plaintiff does not need to prove his entire case on a motion for summary judgment. Rather, the defendants must prove that the undisputed facts entitle them to summary judgment. The defendants have not carried this burden. The material facts sufficient to allow recovery are still in dispute, consequently, the plaintiffs are entitled to their day in court to prove that the facts are as stated in the complaint.

The plaintiffs contend that the facts of this case support a finding of a *per se* violation of the antitrust laws. The defendants contend that the facts will not support a finding of any violation of the antitrust laws. Both parties may be correct. If the plaintiffs can establish the facts which give rise to a *per se* violation of the law then they will recover, however, even if the plaintiffs fail to establish a *per se* violation, they may still establish a general violation of the antitrust laws.

The facts in this case are not as clear as either party may wish this Court to believe. Therefore, the Court concludes that summary judgment would not be appropriate.

The parties are requested to supply the Court, at the appropriate time, with trial briefs setting forth what facts they believe the evidence will establish and the controlling law supporting the proper disposition of this matter on those facts.

## ORDER

It is ORDERED that the defendants' motion for summary judgment is denied.