EDWARD G. HOLLEY v. COGGIN PONTIAC, INC.

No. 7815SC1102

(Filed 16 October 1979)

1. **Accord and Satisfaction § 1— sale of automobile—fraudulent misrepresentations—whether agreement was accord and satisfaction**

    In an action to recover damages for fraud and unfair trade practices in the sale of a demonstrator automobile to plaintiffs, the trial court erred in entering summary judgment for defendant dealer on the ground of accord and satisfaction since there was a genuine issue of material fact as to whether an agreement between plaintiffs, defendant dealer and the automobile manufacturer pertained only to the resolution of particular mechanical problems or whether a potential suit for fraud and unfair trade practices was contemplated in the alleged accord.

2. **Accord and Satisfaction § 1— sale of automobile—fraudulent misrepresentations—cashing of check after knowledge—no accord and satisfaction**

    The fact that plaintiffs cashed a check from defendant for $113.90 subsequent to the time plaintiffs learned of alleged misrepresentations by defendant in the sale of an automobile to plaintiffs did not constitute satisfaction of an accord between the parties as to plaintiffs' claim for damages based upon such misrepresentations where there was no indication that the check was tendered by defendant in full satisfaction of all claims plaintiffs might have arising out of the sale of the automobile. Furthermore, even if an accord had been reached as to the totality of the transaction, the accord would be voidable by plaintiffs if the fact of the initial representations were not known to them when the accord was made.

3. **Penalties § 1; Unfair Competition § 1— unfair trade practice—action for treble damages—statute of limitations**

    An action under G.S. 75-16 to recover treble damages for a violation of the unfair trade practices statute, G.S. 75-1.1, instituted prior to the enactment of the four-year statute of limitations of G.S. 75-16.2 on 21 March 1979, is governed by the three-year limitation of G.S. 1-52(2), not the one-year limitation of G.S. 1-54(2) applicable to actions to recover a statutory penalty.

4. **Penalties § 1— when one-year statute of limitations applies**

    The one-year statute of limitations provided by G.S. 1-54(2) for an action to recover a statutory penalty applies only when the penalty is expressly provided in the statute.

APPEAL by plaintiff from *Battle, Judge*. Judgment entered 21 September 1978 in Superior Court, ORANGE County. Heard in the Court of Appeals 29 August 1979.

On 28 October 1978 plaintiff commenced this action for actual damages, punitive damages and treble damages, alleging that de-

fendant's agents intentionally made misrepresentations and committed deceptive trade practices when, on 11 November 1975, defendant sold plaintiff a demonstrator Volvo for $6,500, following representations by defendant's agent that the automobile was in excellent mechanical condition and that same model car was good for 200,000 miles of trouble-free driving without major repairs. The complaint also alleges that several of defendant's salesmen had used the automobile as a demonstrator and knew that the automobile had serious mechanical problems. The complaint further alleges that following the sale the Volvo required extensive repair work for a missing heat plate, burned interior fixtures, a defective air conditioner, a defective brake rotor, a defective flywheel, and broken motor mounts.

Later uncontroverted affidavits submitted by the plaintiff indicated that in addition to the above problems, repairs or replacements had to be made in or for the rear windshield wiper motor, the electrical system, the roof, the receiver dryer, the exhaust clamp, the steering wheel and the starter.

In January 1978 defendant filed an answer setting forth specific denials and two affirmative defenses of accord and satisfaction and the one-year statute of limitations, N.C. Gen. Stat. § 1-54(2). On 7 September 1978 defendant moved for summary judgment.

Affidavits in opposition to the motion for summary judgment were then submitted by Mr. and Mrs. Holley and Robert Lawrence of Yates Motor Company in Chapel Hill. Lawrence's affidavit stated that in July of 1977 he had been approached by the Holleys who sought to trade the Volvo in on a new automobile. Lawrence further stated that he took the vehicle to defendant Coggin Pontiac, the only Volvo dealer in the area, in order to ascertain the resale value of the car, at which time Lawrence was told by defendant's salesmen: (1) that the vehicle had been used by six different salesmen as a demonstrator; (2) that each of the salesmen had asked to be relieved of the vehicle because of its problems; (3) that the vehicle was worth substantially less than the fair market value for similar vehicles; (4) that the entire sales force considered the vehicle to be a joke; and (5) that one of defendant's salesmen thought the vehicle was unbearable and felt sorry for anyone who purchased it.

On 21 September 1978 the trial court granted summary judgment in favor of defendant on the grounds that the aforementioned accord and satisfaction and statute of limitations left no genuine issue of material fact.

Other necessary facts are stated in the opinion.

*Winston & Blue by J. William Blue, Jr., for plaintiff appellant.*

*Powe, Porter, Alphin & Whichard by N. A. Ciompi for defendant appellee.*

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Associate Attorney Rebecca R. Bevacqua, for the State of North Carolina as amicus curiae.*

CLARK, Judge.

This appeal presents the questions of whether the trial court's action was proper in awarding summary judgment based upon defendant's defenses of accord and satisfaction and the one-year statute of limitations set forth in N.C. Gen. Stat. § 1-54(2). We now hold that with respect to both of these defenses, summary judgment was inappropriately granted.

I.

ACCORD AND SATISFACTION

[1] This aspect of the dispute between the parties involves the scope of an agreement or accord made between the parties in 1977. Defendant, Coggin Pontiac, Inc., argues that plaintiff, Edward Holley, both orally and in writing proposed a full and complete resolution of whatever claims he might have had against defendant. Plaintiff Holley, on the other hand, contends that the agreements reached among himself, defendant and Volvo Corporation of America, (hereinafter "Volvo Corporation") only pertained to resolution of particular mechanical problems. The trial judge, in granting summary judgment, found the accord to be a complete bar to this action.

Summary judgment under N.C.R. Civ. P. 56 serves the ends of judicial economy but the remedy is a drastic one, *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897 (1972). For

this reason the party moving for summary judgment bears the burden of proving that no genuine issue of material fact exists and the court should review the verified pleading or supporting affidavits in a light most favorable to the opposing party. *Id.*

The crux of our holding on the question of accord and satisfaction is that, at the very least, we find a genuine issue of material fact as to whether the scope of the accord, between plaintiff on one side and defendant and Volvo Corporation on the other, went so far as to supplant the tort claims of fraudulent misrepresentation and unfair trade practices which plaintiff brings in this action. While parties may certainly reach an accord as to matters of tort as well as contract, if the accord at issue does not reach the torts of fraud and misrepresentation, the accord cannot be a defense to this action. On the record before us there is little, if any, indication that a claim against Coggin Pontiac for fraudulent misrepresentations was ever considered by either party to be an element of the accord.

It is not for this Court to usurp the jury as the trier of fact on the question of the scope of the accord among Coggin Pontiac, Volvo Corporation and the Holleys. However, there is sufficient evidence favorable to the plaintiff to send this case to the jury. Each item of correspondence from Holley to Coggin Pontiac and Volvo Corporation specifically requested reimbursement for sums expended to remedy particular mechanical problems, as opposed to compensating plaintiff for his loss of market value, his loss of use of his vehicle, his loss of time and aggravation in continually pursuing repairs, and, most important, his right to recover in tort for fraud in the inducement of sale. For example, the letter of 17 January 1977 from plaintiff to Volvo, demands $334.06 in reimbursement for repairs to the flywheel and starter as well as for the cost of renting a car while these repairs were being made. Similarly, the second letter from plaintiff to Volvo Corporation dated 1 May 1977, requested $361.49 in reimbursement for the aforementioned flywheel repairs ($280.06) and an additional sum for replacing the motor mounts ($81.43). The third letter of 11 July 1977, in which Holley asked to bring "this matter to a prompt conclusion" so that the parties could "be rid of each other once and for all," specifically referred to the "long ordeal of waiting, discussing, [and] pleading" which occurred over the six months that "passed since the problem of the flywheel just after

Christmas, 1976." Finally, Holley's letter of 15 July 1977 to Coggin Pontiac explained that Coggin Pontiac still owed Holley $113.90 for towing service and repairs to the flywheel for which Holley had not been fully reimbursed. Nowhere in these letters is there mentioned any prospect of a suit for fraud or unfair trade practice.

The timing of the discovery of the alleged fraud also bears heavily upon the factual issue involving the scope of the accord. It is true that Mrs. Holley stated in her affidavit, "I began to suspect at a very early date that we had not been told the accurate mechanical condition of the vehicle at the time of its purchase." Nonetheless, the Holleys contend that the actual misrepresentations were not revealed until July, 1977, after a long tedious process of repairs and delays in reimbursement had transpired and the frustrated Holleys had begun to talk with Robert Lawrence at Yates Motor Company about trading in their Volvo. In contrast, the negotiations and the correspondence concerning the flywheel, motor mounts, and starter problems began almost seven months before the alleged bad faith of Coggin Pontiac's salesmen was discovered by Lawrence. Indeed, throughout the nineteen-month period in which the Holleys had owned the Volvo, they were in a situation similar to that of a man who drops one grain of sand upon another and then must determine when a pile has been created; only at the culmination of the long period of incremental disappointments did the Holleys have good reason to believe they had been defrauded. We therefore find a genuine issue of material fact as to whether the Holleys even knew they had been defrauded when the accord was made, must less whether a potential suit for fraud and unfair trade practice was contemplated in the accord.

[2] Defendant also contends that plaintiff cashed a check for $113.90 in August, 1977, subsequent to the time in July when plaintiff learned of the alleged misrepresentations, and therefore complete satisfaction, by way of full performance of the settlement accord, was achieved. We do not agree.

It is well settled that an "accord" is an agreement in which one of the parties undertakes a performance in satisfaction of a liquidated or disputed claim arising from either tort of contract, and the other party agrees to accept the performance even

though the performance is otherwise than that to which the accepting party considered himself entitled. "Satisfaction," on the other hand, is the completion or execution of the agreed performance. *Allgood v. Wilmington Savings & Trust Company*, 242 N.C. 506, 515, 88 S.E. 2d 825 (1955); *Dobias v. White*, 239 N.C. 409, 413, 80 S.E. 2d 23, 27 (1954). Normally, however, the accord must be accompanied by actions manifesting a condition that if the offer of performance is accepted, the performance will be tendered in full satisfaction of the obligations owed to the accepting party. *Allgood v. Wilmington Savings & Trust Company, supra. See also,* 1 Am. Jur. 2d Accord and Satisfaction § 1 (1962). In the case *sub judice*, however, there is no language in any correspondence which indicates that the check for $113.90 from defendant was tendered in full satisfaction of all claims, for mechanical repair or otherwise, which plaintiff might have had arising out of the sale of the Volvo; similarly, there was no need for plaintiff to endorse the check for $113.90 "with reservation of rights," as prescribed by N.C. Gen. Stat. § 25-1-207 (1965), in order to preserve his right to bring this suit.

Even if an accord had been reached as to the totality of the transaction, the accord would be voidable at the behest of the plaintiff if, when the accord was purportedly made, the fact of the initial misrepresentation were not known to the Holleys. The taint of the fraud in the inducement of the sale carries over to the accord which arose out of the sale, and for this same reason the accord lacks the element of mutuality which is necessary to enforce any contract. *See* 1 Am. Jur. 2d Accord and Satisfaction § 24 (1962). We therefore hold that the award of summary judgment based upon the defense of accord and satisfaction was improper.

## II.

### STATUTE OF LIMITATIONS

[3] The second issue presented concerns the appropriate statute of limitations for the North Carolina Unfair Trade Practices Statute, N.C. Gen. Stat. 75-1.1 (hereinafter "G.S.") in the decade between 1969 and 1979. This question is one of first impression; its answer does not appear in black and white, and its resolution depends on a sensitive analysis of the statutory scheme by which North Carolina regulates unfair trade practices. We now hold that

the statute of limitations for G.S. 75-1.1 during the period be-
tween 12 June 1969, the date of enactment of G.S. 75-1.1 (1969
N.C. Sess. Laws, c. 833, sec. 3), and 21 March 1979, the date of
amendment by the North Carolina General Assembly (1979 N.C.
Adv. Leg. Serv., § 169, sec. 2, to be codified as G.S. § 75-16.2), is
three years.

In 1969 the North Carolina Legislature adopted the language
of G.S. 75-1.1(a) from Section 5 of the Federal Trade Commission
Act, 15 U.S.C. § 45(a)(1) (1969), and incorporated it within Chapter
75, the North Carolina antitrust statute. The prohibitions and pur-
poses of the unfair and deceptive trade practice statute are
herein provided in relevant part:

"§ 75-1.1. *Methods of competition, acts and practices
regulated; legislative policy.* — (a) Unfair methods of competi-
tion and unfair or deceptive acts or practices in the conduct
of any trade or commerce are hereby declared unlawful.

(b) The purpose of this section is to declare, and to pro-
vide civil legal means to maintain, ethical standards of
dealings between persons engaged in business, and between
persons engaged in business and the consuming public within
this State, to the end that good faith and fair dealings be-
tween buyers and sellers at all levels of commerce be had in
this State."

G.S. 75-1.1(a), (b) (1969). North Carolina, however, did not follow
the enforcement scheme in the Federal Trade Commission Act.
Instead of creating a new agency with the sole authority to en-
force the act, such as the Federal Trade Commission, the General
Assembly placed partial enforcement authority in the Attorney
General and amended the treble damages provision of the North
Carolina antitrust statute to encourage enforcement of the act by
private individuals injured by unfair trade practices. *State ex rel.
Edmisten v. J. C. Penney Co.*, 292 N.C. 311, 320, 233 S.E. 2d 895,
901 (1977). *See generally*, Aycock, Antitrust and Unfair Trade
Practice Law in North Carolina — Federal Law Compared, 50
N.C.L. Rev. 199 (1972); Morgan, The People's Advocate in the
Marketplace — The Role of the North Carolina Attorney General
in the Field of Consumer Protection, 6 Wake Forest Intra. L. Rev.
1 (1969) (hereinafter, "Morgan"); Comment, Trade Regula-
tion — The North Carolina Consumer Protection Act of 1977, 56

N.C.L. Rev. 547 (1978); Comment, Consumer Protection and Unfair Competition in North Carolina—The 1969 Legislation, 48 N.C.L. Rev. 896 (1970); Note, Trade Regulation—G.S. § 75-1.1—Unfair or Deceptive Acts or Practices in the Conduct of Trade or Commerce, 12 Wake Forest L. Rev. 484 (1976); Note, Consumer Protection—*Hardy v. Toler*: Applying the North Carolina Deceptive Trade Practices Legislation, 54 N.C.L. Rev. 963 (1976); Note, Consumer Protection and Unfair Competition in North Carolina—The 1969 Legislation, 48 N.C.L. Rev. 896 (1970).

The defendant now correctly cites: *Williams v. Gibson*, 232 N.C. 133, 59 S.E. 2d 602 (1950); *Smoke Mount Industries, Inc. v. Fisher*, 224 N.C. 72, 29 S.E. 2d 128 (1944); *Waters v. Telegraph Company*, 194 N.C. 188, 138 S.E. 608 (1927); *Dozier v. Bray*, 9 N.C. (2 Hawks) 57 (1822), for the proposition that throughout the entire body of North Carolina law, there runs the concept that an action to recover more than a plaintiff's actual damages is a penalty. From this authority the defendant argues that the treble damages provision of G.S. 75-16 constitutes a penalty and that therefore the following one-year statute of limitations of G.S. 1-54(2) applies to the present action:

"§ 1-54. *One year.*—Within one year an action or proceeding—. . . .

(2) Upon a statute, for a penalty or forfeiture, where the action is given to the State alone, or in whole or in part to the party aggrieved, or to a common informer, except where the statute imposing it prescribes a different limitation."

The defendant's argument, however, does not convince us that the answer is so simple.

First, it does not necessarily follow that because other multiple damages statutes have been found to involve penalties, all multiple damages provisions must therefore be penalties. Indeed, to adopt this reasoning, without more, would be to wander aimlessly through the annals of *stare decisis*. Quite simply, it may be inappropriate to select limitations by analogy from one subject to another, 53 C.J.S. Limitations of Actions § 33 (1948), especially if to do so would run against the policy and intent of the Legislature enacting the act in question, or if to do so would disregard the nature of the right involved.

We are hesitant to make such an analogy in this case, for in none of the *Dozier, Waters, Williams,* or *Smoke Mount Industries* cases, *supra,* cited by defendant, did the court address any question of application of a statute of limitations or was there in existence a complex scheme of public and private enforcement at the state level that resembles the North Carolina unfair trade practice statute. These distinctions require further elaboration.

A statutory provision may have punitive elements and still not constitute a "penalty." As has been explained by our Supreme Court, the distinguishing characteristic of a penal statute is that it is " 'prosecuted for the *sole* purpose of punishment, and to deter others from acting in a like manner.' " (Emphasis supplied). *Edmisten v. J. C. Penney, Inc.,* 292 N.C. at 319, 233 S.E. 2d at 900. However, the unfair trade practice treble damages provision, G.S. 75-16, does not manifest such a singularity of purpose; rather, the statute is a "hybrid," *Edmisten v. J. C. Penney Co., supra,* with at least three major purposes: (1) to serve as an incentive for injured private individuals to ferret out fraudulent and deceptive trade practices, and by so doing, to assist the State in enforcing the act's prohibitions; (2) to provide a remedy for those injured by way of unfair and deceptive trade practices; and (3) to serve as a deterrent against future violations of the statute. Only the latter of these purposes is at all punitive in nature, and we note that actions for punitive damages are not covered by the one-year statute of limitations, *Reid v. Holden,* 242 N.C. 408, 88 S.E. 2d 125 (1955). Having multiple objectives of which some are not penal in nature, the statute cannot be deemed a penal statute, *see, Huntington v. Attrill,* 146 U.S. 657, 667, 13 S.Ct. 224, 227, 36 L.Ed. 1123, 1127-28 (1892), and for this same reason it would not be appropriate to construe and apply G.S. 1-54(2) to the exclusion of the remedial and private enforcement objectives of G.S. 75-16.

Moreover, in 1977, the Legislature specifically created a "civil penalty" for violations of G.S. 75-1.1:

> "§ 75-15.2. *Civil Penalty.*—In any suit instituted by the Attorney General, in which the defendant is found to have violated G.S. 75-1.1 and the acts or practices which constituted the violation were, when committed, specifically prohibited by a court order or knowingly violative of a statute, the court may, in its discretion, impose a *civil penalty* against

the defendant five thousand dollars ($5,000) for each violation. In determining the amount of the *civil penalty*, the court shall consider all relevant circumstances, including, but not limited to, the extent of the harm caused by the conduct constituting a violation, the nature and persistence of such conduct, the length of time over which the conduct occurred, the assets, liabilities, and net worth of the person, whether corporate or individual, and any corrective action taken by the defendant. Any penalty so assessed shall be paid to the General Fund of the State of North Carolina." (Emphasis supplied.)

1977 N.C. Sess. Laws, c. 747, sec. 3. It would not be proper for this Court to strain to infer that the General Assembly meant the treble damages provision of Chapter 75 to be a penalty where, in the preceding statutory section, the General Assembly has expressly created a "penalty" denominated as such and reserved the authority to enforce the "penalty" to the State's chief law enforcement officer. The language of G.S. 75-15.2 is sufficiently particular for us to conclude that had the General Assembly intended its sister provision, G.S. 75-16, also to be a "penalty," the General Assembly would have expressly provided for a second "penalty."

All of the above is consistent with the statement of Mr. Justice Gray, in *Huntington v. Attrill, supra*, that "[t]he test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual . . . ." 146 U.S. at 668, 13 S.Ct. at 228, 36 L.Ed. at 1128. We therefore think that with respect to Chapter 75, the treble damages provision addresses individual grievances and the civil penalty provided addresses the harm against the public welfare. We stress that the former may be brought only by the person injured, the latter only by the Attorney General.

In addition, in *State ex rel. Edmisten v. J. C. Penney Co., supra*, our Supreme Court expressly rejected the argument that the treble damages provision, G.S. 75-16, is penal:

"The State and the defendant both call our attention to various rules of construction that they deem controlling. *Defendant contends the statute is penal in nature* and, thus, must be strictly construed. *Chadwick v. Salter*, 254 N.C. 389,

119 S.E. 2d 158 (1961). The State, on the other hand, insists the statute is remedial and must, therefore, be broadly construed. *Morris v. Staton*, 44 N.C. 464 (1853). *We find neither of these views persuasive.*" (Emphasis supplied.) 292 N.C. at 319, 233 S.E. 2d at 900.

Earlier this year the North Carolina General Assembly addressed the question before us by providing that "[a]ny civil action brought under [Chapter 75] to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues." 1979 N.C. Adv. Legis. Serv., c. 169, sec. 1, to be codified as G.S. 75-16.2. However, during the legislative process language in section 2 of House Bill 238, later enacted and ratified as the aforementioned Section of Chapter 75, was changed from the following:

"This act is effective upon ratification and shall apply to all civil actions pending and claims accrued as of that date."

to the following:

"This act is effective upon ratification but shall not apply to any pending civil action."

Thus we agree with the defendant that the new enactment does not apply to the case at bar.

Defendant, however, argues that since the transmittal memorandum[1] from the Attorney General's Office cited this particular case as a reason for the bill, and since the Legislature decided not to make the legislation effective as to pending litigation, the one-year statute of limitations embodied in G.S. 1-54(2) is therefore applicable. We disagree. The question of whether a one-year or a three-year statute should apply to G.S. 75-16 prior to the enactment of G.S. 75-16.2 has never been addressed by the General Assembly or the North Carolina Appellate Courts. By changing the law for future actions under G.S. 75-16 the Legislature did not determine, as we must do now, what the prior law was. We think that by acting prospectively the Legislature did not thereby ratify the application of the one-year rule to G.S. 75-16 prior to the date of the amendment, but rather merely made

---

1. Memorandum from Leigh Emerson Koman, Assistant Attorney General, to Representative William H. McMillan, concerning *H. B. 238, Statute of Limitations Under Chapter 75*, February 13, 1979. This memorandum was not in the record but was submitted by defendant as an addendum to his brief on appeal.

it clear that the one-year rule was inappropriate for the treble damages provisions. The very same transmittal memorandum which defendant presents to this Court emphasizes this point:

"... In addition, it appears that the provisions in § 75-16 for treble damages and in § 75-16.1 for attorney's fees were intended by the General Assembly to serve as an incentive to injured parties to pursue their rights under that chapter. The nature of the violations of Chapter 75 is such that a one year statute of limitations makes it next to impossible to effectuate the policy behind Chapter 75. . . ."

This memorandum further noted, and correctly so, that G.S. 1-52(2), hereinafter quoted, was a possible alternative to the one-year statute:

"§ 1-52. *Three years.* — Within three years an action —

\*    \*    \*    \*

(2) Upon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it."

1975 Sess. Laws, c. 252, sec. 2. Consequently, we do not glean from the transmittal memorandum, by negative implication, that by enacting the four-year limitations period in G.S. 75-16.2 the General Assembly meant this case to be bound by the one-year rule. Even though the four-year limitations amendment does not apply to the instant case, the underlying policy reasons do, and given the choice between the one-year rule in G.S. 1-54(2) and the three-year rule in G.S. 1-52(2), we find the latter more appropriate. We do not find it inconsistent herewith that the General Assembly has subsequently extended this period to four years in conformity with limitations for treble damages suits under federal antitrust legislation. 15 U.S.C. § 15b (1979). *Cf.* 15 U.S.C. § 57d (1979) (the three-year limitations period for unfair trade practice actions brought by the Federal Trade Commission).

Our holding today is in conformity with the rules of construction that, " 'a statute of limitations should not be applied to cases not clearly within its provisions,' " *Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach*, 274 N.C. 362, 372, 163 S.E. 2d 363, 370 (1968), and that where there is doubt as to which statute of

limitations should apply, the longer statute should be chosen. 51 Am. Jur. 2d Limitation of Actions § 63 (1970).

There is still another more substantive reason why the three-year period is more appropriate. It has long been a general rule that in determining the applicable statute of limitations, the focus should be upon the nature of the right which has been injured and not the remedy therefor. *New Amsterdam Casualty Co. v. Waller*, 301 F. 2d 839 (4th Cir. 1962) (interpreting G.S. 1-52(9)). *See also*, 51 Am. Jur. 2d Limitation of Actions § 62. Indeed, to let the limitations be determined by the remedy would be to have the tail wag the dog.

Similarly, " '[i]t is well settled that when there is doubt as to the time when the limitation commences to run, that construction should be given which is most favorable to the enforcement of the common-law rights of the citizen.' " *Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach*, 274 N.C. at 372, 163 S.E. 2d at 370, quoting 34 Am. Jur. Limitation of Actions § 37.

In this case the gravamen of the alleged offense is fraud in the inducement of sale of an automobile effected by misrepresentations of a salesman. *See, e.g., Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 392 (1975), with facts similar to those in the case at bar, in which such fraudulent behavior was found to be a violation of the prohibition against unfair and deceptive trade acts. The North Carolina unfair and deceptive trade practice legislation, even though modeled after a federal statute, is itself a statutory amalgam and expansion of the common-law torts of fraud and unfair competition. *See, e.g., Irwin v. Sherrill*, 1 N.C. (1 Tay.) 99 (1799) (deceit in the inducement of sale of a wasted mare). *See also, Morgan, supra,* at p. 20. Although it is not necessarily true that all unfair trade practices constitute fraud, *Hardy v. Toler, supra,* it would be inconsistent, where, as in the instant case, fraud is the gist of the unfair trade practice, to construe the limitations for G.S. 75-1.1 and G.S. 75-16 to be one year when the statute of limitations for fraud is three years. G.S. 1-52(9). Without a specific mandate from the Legislature, we will not construe the remedy so as to cut off the very right which the remedy is designed to protect.

[4] We must now ask: if the right and not the remedy is to determine the appropriate statute of limitations, when, if ever, is

the one-year statute of limitations for penalties to apply? The answer is that the one-year rule applies when a penalty is provided "upon a . . . statute," G.S. 1-54(2), and since penal statutes are to be construed strictly, *Chadwick v. Salter*, 254 N.C. 389, 397, 119 S.E. 2d 158, 164 (1961), we take this to mean that the "penalty" must be spelled out and not implied. With respect to unfair trade practices, such a "penalty" is expressly provided in G.S. 75-15.2; no penalty, however, is provided in G.S. 75-16, the treble damages provision. In this regard we note that in the only North Carolina case in which it was held that the one-year statute of limitations for actions for penalties applied, the penalty at issue was specifically prescribed in the revenue statute. *Hewlett v. Nutt*, 79 N.C. 263 (1878). All other North Carolina cases mentioning G.S. 1-54(2) either did not reach the issue, *Wooley v. Bruton*, 184 N.C. 438, 114 S.E. 628 (1922), or held that a statute of limitations other than G.S. 1-54(2) applied, *Williams v. Adams*, 288 N.C. 501, 219 S.E. 2d 198 (1975).

To say that the legislative intent to create a penalty must be spelled out is also consistent with the prevailing rule in North Carolina that a penalty must be for a sum certain. *State v. Maultsby*, 139 N.C. 583, 51 S.E. 956 (1905); *Commissioners v. Harris*, 52 N.C. 281 (1859); *State v. Crenshaw*, 94 N.C. 877 (1886). *Contra: Dowd v. Seawell*, 14 N.C. 185 (1831); *Dozier v. Bray, supra*. We do not go so far as to say in this case that multiple damages can never be sums certain and therefore can never be penalties, but rather we stress that all penalties must be expressly provided and that this requirement will almost always be met where a penalty for a sum certain is created. However, by providing for a civil penalty with a sum certain of $5,000 in G.S. 75-15.2, and by not enacting a similar provision for a sum certain in G.S. 75-16, we think that the Legislature meant the former to be a penalty and the latter not to be a penalty. This reasoning is no more than a variation of the general rule of *ejusdem generis*, that where there are general words (the treble damages provision, G.S. 75-16) following particular and specific words (the $5,000 "civil penalty" provision, G.S. 75-15.2), the meaning of the general words must be restricted by the particular designation. 51 Am. Jur. 2d Limitations of Actions § 53 (1970); Annot., Application of the Rule of Ejusdem Generis to Statutes of Limitations, 39 A.L.R. 1404 (1925).

We turn now to the federal cases which have held that the one-year statute of limitations found in G.S. 1-54(2) applies to treble damages actions under G.S. 75-1.1. *Harris v. Atlantic-Richfield Company*, 469 F. Supp. 759 (E.D.N.C. 1978); *C.F. Industries v. Transcontinental Gas Pipeline*, 448 F. Supp. 475 (W.D.N.C. 1978); *Thomas v. Petro-Wash, Inc.*, 429 F. Supp. 808 (M.D.N.C. 1977). The North Carolina Supreme Court has stated that while federal decisions construing the Federal Trade Commission Act may furnish some guidance to the meaning of G.S. 75-1.1, *Hardy v. Toler, supra*, the federal court decisions are not controlling in construing the North Carolina Act. *State ex rel. Edmisten v. J. C. Penney Co., supra*. After careful consideration we do not find a sufficient foundation to support these holdings.

The *Harris, C.F. Industries* and *Thomas* cases, *supra*, all rely upon the decision of the Fourth Circuit in *North Carolina Theatres, Inc. v. Thompson*, 277 F. 2d 673 (4th Cir. 1960). The *North Carolina Theatres* decision, however, was applying the North Carolina statute of limitations to the *federal* antitrust laws under the doctrine of *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906), that where the federal statute is silent the limitations period prescribed by state law will be applied. The *North Carolina Theatres* decision did not interpret Chapter 75 of the North Carolina General Statutes.

In addition, the *North Carolina Theatres* opinion was written nine years prior to the enactment of G.S. 75-1.1 and does not take into account the unique North Carolina statutory scheme of enforcement, the existence of the "civil penalty" expressly provided in the statute, the nature of the particular rights invaded, and the spirit of the antifraud provisions of the Act. The application of the one-year rule in *North Carolina Theatres* was unnecessarily grudging. We find that, in contrast to the one-year rule, a three-year statute of limitations for G.S. 75-1.1 and 75-16 provides a reasonable period of time in which to ferret out and investigate unfair trade practices, especially where, as in the instant case, elements of deceit or misrepresentations by silence may have been involved.

Moreover, the action in *North Carolina Theatres* was filed in 1952. In 1955 Congress amended the Clayton Act to provide a

four-year statute of limitations for private antitrust actions and thereby rendered the decision in *North Carolina Theatres* obsolete. 15 U.S.C. § 15b, 69 Stat. 283 (1955), amended in part 90 Stat. 1396 (1976).

Similarly, prior to the enactment of the federal four-year statutory limitations period, the United States Supreme Court in *Chattanooga Foundry, supra*, rejected the argument that the treble damages provision of the federal antitrust laws was a penalty:

> "The limitation of five years in Rev. Stat. § 1047, U.S. Comp. Stat. 1901, p. 727, to any 'suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States,' does not apply. The construction of the phrase 'suit for a penalty,' and the reasons for that construction, have been stated so fully by this court that it is not necessary to repeat them. . . ."

203 U.S. at 397, 27 S.Ct. at 66, 51 L.Ed. at 244. Similarly, our holding today is in conformity with a substantial majority of states in which the rule was stated that the private action treble damages provision of the federal antitrust statute did not constitute a penalty for purposes of the local statutes of limitations. 3 Trade Reg. Rep. (C.C.H.) § 9132 (1971). (Limitations rule for an action upon a statute *other than* a penalty or forfeiture applied: Colorado, 2 years; Florida, 3 years; Kansas, 3 years; Montana, 2 years; New York, 6 years; Ohio, 6 years; Oklahoma, 3 years; Utah, 3 years. Limitations rule for penalties rejected and tort or catchall rules applied: Connecticut, 3 years; Delaware, 3 years; Georgia, 4 years; Maryland, 3 years; Massachusetts, 2 years; Michigan, 6 years; Minnesota, 2 years; New Hampshire, 6 years; New Mexico, 4 years; Pennsylvania, 6 years; Tennessee, 10 years; Texas, 2 years; Virginia, 5 years. Even when called a "penalty," longer statutory periods were involved: Illinois, 2 years; Indiana, 2 years; Missouri, 3 years; New Jersey, 2 years; Washington, 3 years; Wisconsin, 2 years. Only in a few instances where the treble damages provision was found to be a penalty was there a one-year period of limitations: Alabama, California, Kentucky, Louisiana, Puerto Rico.)

The order of the trial court granting summary judgment to defendant is reversed and this case is remanded for further proceedings consistent herewith.

Reversed and Remanded.

Judges ERWIN and WELLS concur.