William J. DAVIDSON, Appellant,

v.

UNITED STATES, Appellee.

No. 81–102.

District of Columbia Court of Appeals.

Argued April 12, 1983.

Decided Oct. 17, 1983.

John P. Dwyer, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., at the time the brief was filed, was on brief, for appellant. Barbara R. Miller and Linda Jacobson, Public Defender Service, Washington, D.C., also entered appearances, for appellant.

G. William Currier, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell and John R. Fisher, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before KERN and NEBEKER, Associate Judges, and GALLAGHER, Associate Judge, Retired.

KERN, Associate Judge:

Appellant was convicted upon his plea of guilty to the misdemeanor crime of destruction of property, D.C.Code § 22–405 (1981), for throwing a tear gas grenade into a bar and restaurant located in the Capitol Hill area of the city. The trial court sentenced him to 270 days in jail. Appellant, a member of the Marine Corps at the time of the offense and the sentencing, then sought work release pursuant to D.C.Code §§ 24–461 (1981) *et seq.*, to allow him to continue his Marine service while also serving his sentence. The trial court, after argument and testimony, granted work release conditioned upon the payment by appellant of his Marine Corps salary while on work release to the bar-owner as restitution for a part of the damages incurred which was estimated to amount to some $30,000.

Appellant challenges this condition of his work release order. He asserts that the applicable statute provides the trial court with no authority to condition its release order on the payment of restitution. He further contends that for the trial court to do so undermines the purpose of work release; and that Congress could have included such a provision in the statute but chose not to do so. We disagree and affirm the order of the trial court.

I

Appellant claims that the D.C. Work Release statute, D.C.Code §§ 24–461 (1981) *et seq.*, is a penal statute, and cites to the general rule that in construing such a statute where two interpretations are possible, a court "must choose the least harsh alternative." (Reply Brief at 4.) He contends that under this general rule the statute at issue must be construed narrowly and therefore, it follows that the court had no authority to impose a sentence, *viz.*, restitution as a part of work release, not expressly provided by statute. (Reply Brief at 1–2.) Here, appellant argues, since restitution is not a remedy provided for specifically in either § 24–461 or § 24–463 of the work release statute, the trial court lacked authority to impose it as a condition of its work release sentence.

We disagree based on the legislative history which indicates that this is a remedial, not a penal, statute. Work release ameliorates the harshness of a jail term, and minimizes the stigma of complete imprisonment. In contrast, a penal statute has punishment as its primary purpose. *Holley v. Coggin Pontiac, Inc.,* 43 N.C.App. 229, 237, 259 S.E.2d 1, 6 (1979). SUTHERLAND, *Statutory Construction,* § 60.04 (4th ed. 1974). Clearly, punishment is not the primary purpose of work release, as it aims at rehabilitation of prisoners.[1]

1. The House report states that the "... objectives of this work release program are directed primarily at rehabilitation of younger misdemeanants convicted of minor offenses ...." H.R.Rep. No. 2250, 89th Cong., 1st Sess. 1, 2 (1965). These were also the remarks by Representative Dowdy in speaking on the floor of the House of Representatives concerning the work release bill. 112 Cong.Rec. 26652 (Oct. 13, 1966). The Senate report reflects a similar sentiment in noting that the bill's "... purpose is to authorize courts of the District of Colum-

 Furthermore, there is nothing in either the statute or its legislative history supporting appellant's contention that restitution undermines the purpose of work release. Although one goal of the work release statute may be to enable the prisoner to support his family and dependents, its primary purpose is to maintain the prisoner's "morale, self respect, dignity and rehabilitation." (Senate Report at 3; 112 Cong. Rec. at 16652.)

 Since the statute is remedial in nature, we are not persuaded by the contention of appellant that this court must narrowly construe its provisions. We note that the language in § 24–463 empowers the sentencing court to set " . . . the terms and conditions under which a person granted work release privileges may be released from actual custody during the time necessary to proceed to his place of employment . . . and return to a place of confinement designated . . . ." Nothing in either this language or the legislative history indicates that the sentencing judge, when granting work release, is limited by this language *only* to fixing in his order the details of the time of the prisoner's release and his return to confinement, and of his transportation to and from his place of work. To the contrary, we conclude the expansive statutory language quoted above, together with the remedial nature of the statute, provide the judge with greater, not fewer, options in constructing an appropriate work release plan.

Finally, under § 24–466(6), work release plans may include a provision for using the money earned by the prisoner, in part, as " . . . payment, either in full or ratably, of the prisoner's debts which . . . have been reduced to judgment." Appellant pled guilty in the instant case to destroying the owner's property and was adjudicated guilty upon the basis of such plea.[2] Neither the statute nor its legislative history indicated that restitution to this victim cannot be used as a means of paying this kind of debt which rests upon a guilty plea.

We conclude that the work release statute is remedial in nature. As such, its provisions may be interpreted broadly and the trial court's order of restitution was proper. *See Hutchison Bros. Excavation Co. v. District of Columbia,* 278 A.2d 318, 321 (D.C.1971); SUTHERLAND, *Statutory Construction,* § 60.01 (4th ed. 1974).

## II

Appellant further maintains that had Congress intended to give the trial court such broad power to order restitution, the statute would have been more broadly worded when enacted. *See, e.g.,* D.C.Code § 16–710 (1981) (probation statute which Congress enacted to give the trial court discretion to order probation "upon such terms as it deems best"). Alternatively, appellant urges, the statutory language would have specified restitution as an allowable disbursement from a work release prisoner's salary.[3]

bia to release selected offenders from prison confinement . . . to obtain or engage in gainful employment." S.Rep. No. 178, 89th Cong., 1st Sess. 1, 3 (1965).

2. It is clear that this criminal conviction could be used in any subsequent civil action for damages which the owner might bring against appellant. The judgment would be conclusive evidence of the appellant's guilt. *Ross v. Lawson,* 395 A.2d 54 (D.C.1978) (his criminal conviction for assault estopped the defendant from denying his liability in a later civil suit brought by plaintiff); *Lassiter v. District of Columbia,* 447 A.2d 456, 458–59 (D.C.1982).

3. While some courts have struck down restitution when ordered by trial judges without express legislative authorization, the defendants there were in jail *and* required at the same time to make restitution. The present case involves a defendant who was permitted to leave jail on work release for the major part of the day. *See Commonwealth v. Frisoli,* 255 Pa.Super. 593, 389 A.2d 136 (1978); *State v. Wright,* 156 N.J. Super. 559, 384 A.2d 199 (1978).

Appellant's release from jail under the work release program enabled him to continue his employment to obtain the funds with which to repay the owner. This appears to be a different situation than when a prisoner is ordered to make restitution while still incarcerated.

■ First, we note that the Council of the District of Columbia has enacted recent legislation providing express standards for use by Superior Court judges when they ·employ restitution as a rehabilitative component of sentencing. *See generally*, D.C. Sentencing Improvements Acts of 1982, D.C.Law 4–202, 30 D.C.Reg. 173 (Jan. 14, 1983).[4] Thus, it is conceded that had appellant moved for and been granted work release after January 14, 1983, the effective date of the Act, the sentencing judge's order of restitution would have been unassailable. The legislative history of that new Act contains repeated references to the *present* use of restitution as a sentencing alternative in the Superior Court. There is no mention that the option of restitution is either a *new* alternative or one which the Superior Court previously lacked. To the contrary, the drafters noted that the "... provisions defining restitution ... are designed not to grant the *already-existing authority* to the court to use these alternatives, but to provide standards on how the alternatives are to be used." Report of the Committee on the Judiciary, Council of the District of Columbia to Members of the Council, at 1, 3 and 4 (November 10, 1982) (emphasis added).

When the Report discusses restitution as a sentencing option, there is no differentiation made between its use in probation and work release. Thus, restitution appears to have been recognized by the Council as a sentencing alternative available under the general rubric of sentencing at the time of the enactment of the 1982 Act. Therefore, the authority to utilize restitution had existed when a judge selected either one of the alternative mechanisms under the overall sentencing scheme, *i.e.*, probation or work release. ·

The recognition that restitution is "... widely used in Superior Court ..." as a sentencing technique (Committee on the Ju-

diciary Report, *supra* at 5), negates the contention by appellant that the trial judge's use of restitution as part of a work release plan for appellant was an aberration of the sentencing process in the instant case.

### III

Finally, appellant notes that of the four state statutes which served as models for §§ 24–461 *et seq.*, according to the legislative history of the work release statute, the statutes of two states do provide specifically for restitution; thus, in appellant's view, had Congress intended to permit the trial court to impose restitution when ordering work release there was ample precedent for Congress to enact such a provision. *See* Md.Ann.Code art. 27 § 645K, *et seq.* (1982); N.C.Gen.Stat. § 148–33.1 (1978); *cf.* Minn. Stat.Ann. § 631.425, subd. 5; Wis.Stat.Ann. § 56.065(4)(b) (no provisions for restitution in the latter statutes).

Contrary to appellant's argument, we are not persuaded that the existence of such provisions in two of the four statutes utilized in designing the statute for the District of Columbia indicates that the omission by Congress in the District's statute reflected a congressional decision to deny to sentencing judges the use of restitution when granting work release.

■ As previously noted, the legislative history of the new Act enacted by the City Council reflects an intent to codify what the Council deemed was in fact existing authority and to provide guidelines for using the tool of restitution. Moreover, when a "... statute is a composite of the statutes of two states the court will usually refuse to follow the construction of either state and will construe the statute according to its plain meaning." SUTHERLAND, *Statutory Construction*, § 52.02 (4th ed. 1974). A comparison of the four statutes with the

---

4. We note the enactment by Congress of P.L. 97–291 (97th Cong., 2d Sess.1982), the Victim and Witness Protection Act of 1982 (codified as 18 U.S.C. § 1501 *et seq.*). Under §§ 3579 and 3580, restitution is provided as a sentencing mechanism in the federal criminal area. The authority to impose restitution in addition to, or in place of, any other penalty is all-encompassing. Any time a sentence is imposed restitution may be ordered pursuant to this Act.

D.C. statute shows that the Congress in its enactment considered some, not all, of the ideas and language in the other state statutes. However, the D.C. statute is *not* a verbatim adoption of any one of the particular statutes, and therefore, the construction of the "parent" state statutes is not controlling in construing the D.C. statute. *Id.*

 In sum, the legislative history of the work release statute shows an intent to rehabilitate prisoners by allowing them to continue at their place of employment, while serving a sentence of imprisonment; thereby, serving their debt to the community while also maintaining their dignity by continuing to work and to earn their salary as before. Given the remedial nature of the statute, we conclude it must be read broadly so that the authority of the sentencing judge to fix "the terms and conditions" of the work release may include restitution—particularly when the statute contains a provision permitting the convicted defendant's salary to be used, *inter alia,* to pay any debt which has been reduced to judgment. In addition, the legislative history of the new Act reflects the fact that the Council was merely codifying *existing* authority in sentencing courts to permit the use of restitution as a part of the overall sentencing scheme whether or not it was work release. Accordingly, the trial judge here possessed the authority to order restitution when granting work release from a prison sentence for 270 days.

*Affirmed.*

NEBEKER, Associate Judge, dissenting:

I respectfully dissent. While I do not dispute the worth of permitting a trial judge to condition work release on the payment of restitution, I am unable to locate statutory authority for so doing in this case. The majority's statement that nothing in the work release statutory scheme bars restitution simply begs the question. D.C. Code § 24–463 (1981) limits the sentencing court's authority to regulate the conditions of an individual's work release to the time, place and manner of getting to and from his place of work. It does not, by implication, authorize restitution. This conclusion is even more apparent after the D.C. Council's recent passage of legislation expressly authorizing restitution as a sentencing tool in all sentencing matters. *See generally* D.C. Sentencing Improvements Act of 1982, D.C.Law 4–202, 30 D.C.Reg. 173 (Jan. 14, 1983). Surely that Act is not redundant. Previously, where the Congress has sought to permit restitution, it has expressly so provided. *See* D.C.Code § 22–2202 (1981) (restitution permitted as sentencing alternative in cases of petit larceny).

Fine discussions of the penal or rehabilitative purposes of the work release statute aside, there was no authority for the trial court's imposition of restitution as a condition of appellant's work release. Should the new Sentencing Improvements Act be repealed or later limited, this decision seems to say that restitution (in the name of rehabilitation and not in the interest of justice for the victim) is permitted in any event and for any offense. While as a matter of favored policy I might agree that restitution in this and other cases is a fine idea, I submit that the rule of law should not be sacrificed in the name of presently perceived virtue. I would vacate the sentence and remand for resentencing.